UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
David Catalano and Joanne Catalano,

                    Plaintiffs,

      -against-

MarineMax; MarineMax Northeast LLC;
Brunswick Corp.; SeaRay Boats; and
Mercury Marine,

                  Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-04134 (DG) (JMW)

DIANE GUJARATI, United States District Judge:

On September 3, 2020, Plaintiffs David Catalano and Joanne Catalano (collectively,

"Plaintiffs") commenced this action against Defendants MarineMax, MarineMax Northeast LLC,

Brunswick Corp., SeaRay Boats, and Mercury Marine (collectively, "Defendants"), asserting

seven causes of action: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

breach of express warranty; breach of implied warranty; violation of the Truth in Lending Act,

15 U.S.C. § 1601 *et seq.*; violation of New York General Business Law § 349; violation of New

York General Business Law § 198-D; and breach of contract.  *See generally* Complaint

("Compl."), ECF No. 1.

Pending before the Court is Defendants' motion for judgment on the pleadings, in which

Defendants seek dismissal of Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure

12(c) ("Rule 12(c)").  *See generally* Notice of Motion, ECF No. 23; Declaration of David S.

Rutherford in Support of Defendants' Motion for Judgment on the Pleadings ("Rutherford

Declaration"), ECF No. 24;[1] Memorandum in Support of Defendants' Motion for Judgment on

---

[1]  Together with the Rutherford Declaration, ECF No. 24, Defendants submitted seven exhibits,
*see* ECF Nos. 24-1–24-7.  In referring to these exhibits, the Court refers to the lettering

the Pleadings ("Defs.' Br."), ECF No. 25; Reply in Support of Defendants' Motion for Judgment

on the Pleadings ("Defs.' Reply"), ECF No. 28.[2]  Plaintiffs oppose Defendants' motion.  *See*

Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings ("Pls.' Br."),

ECF No. 27.

For the reasons set forth below, Defendants' motion for judgment on the pleadings is

granted and the claims in the Complaint are dismissed without prejudice.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are

closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  "In deciding a 12(c) motion, the Court may consider 'the complaint, the

answer, any written documents attached to them, and any matter of which the court can take

judicial notice for the factual background of the case.'"  *Thyssenkrupp Materials NA, Inc. v. M/V*

*Kacey*, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*,

647 F.3d 419, 422 (2d Cir. 2011)).  "The Court may also consider documents incorporated into

the complaint by reference or integral to the complaint, provided there is no dispute regarding

their authenticity, accuracy, or relevance."  *Id.* (citing *L-7 Designs, Inc.*, 647 F.3d at 422).  "A

Rule 12(c) motion should be granted 'if, from the pleadings, the moving party is entitled to

_____

ascribed to the exhibits in the Rutherford Declaration.  For example, the Court refers to the
submission docketed at ECF No. 24-1 as "Defs.' Ex. A."  In citing to these exhibits, the Court
refers to the pagination generated by the Court's electronic case filing system ("ECF"), rather
than the exhibits' internal pagination.  All other citations are to the cited document's internal
pagination.

[2]  Although Defendants' motion was docketed as a "Motion to Dismiss for Failure to State a
Claim," *see* ECF No. 23, Defendants' motion papers make clear that Defendants' motion is a
motion for judgment on the pleadings made pursuant to Rule 12(c), *see, e.g.*, Defs.' Br. at 1.
Accordingly, the Court herein refers to Defendants' motion as a motion for judgment on the
pleadings.

judgment as a matter of law.'" *Id.* (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Loc. 537*, 47 F.3d 14, 16 (2d Cir. 1995)).

"The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019) (citing *L-7 Designs, Inc.*, 647 F.3d at 429; *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)).  To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court must "accept all 'well-pleaded factual allegations' in the complaint as true . . . [and] 'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).  However, "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 555, 558. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

# BACKGROUND

## I.    Factual Background[3]

### A.    The Vessel and Plaintiffs' Issues with the Vessel

On or about August 19, 2014, Plaintiffs purchased a 2014 Sea Ray 300 SLX, HIN SERV2227A414 (the "vessel") from MarineMax Northeast LLC.  Compl. ¶ 13.  The purchase price of $165,780.00, plus interest, taxes, and fees, was financed through MarineMax.  *Id.* ¶ 14.[4] The vessel was sold as new.  *Id.* ¶ 14.[5]  The vessel was equipped with engines manufactured by Mercury Marine.  *Id.* ¶ 16.

After the vessel's purchase, and commencing sometime in or about late September or early November of 2014, and continually thereafter, Plaintiffs experienced "nothing but problems, mechanical and otherwise, with the vessel."  *Id.* ¶ 17.  The "multitude of issues" with the vessel included, but were not limited to, "throttle, transmission and gear box issues, faulty sensors, faulty fuel lines, electrical, battery and alternator issues, power trim issues, water pump an[d] overheating issues, loss of power engine misfiring and exhaust issues, as well as manifold and riser gasket issues."  *Id.* ¶ 18.  The vessel "also apparently suffered from defective upholstery as the surface thereof developed unsightly spots of a pinkish hue all over the white upholstery."  *Id.*  The vessel also was "plagued with general poor performance which grew increasingly notable season after season."  *Id.* ¶ 19.  Plaintiffs allege that these issues gravely

---

[3]   The following facts, which are viewed in the light most favorable to Plaintiffs, are drawn from the Complaint and from certain documents incorporated into the Complaint by reference or integral to the Complaint, as to which there is no dispute regarding authenticity, accuracy, or relevance.

[4]   The Complaint includes two consecutive paragraphs numbered "14."  Here, the Court refers to the first of the two paragraphs numbered "14."

[5]   Here, the Court refers to the second of the Complaint's two paragraphs numbered "14."

diminished the value of the vessel and deprived Plaintiffs of the use and enjoyment of the vessel that they bargained for and prohibited Plaintiffs from utilizing the vessel for its intended and basic purpose.  *Id.* ¶ 20.

Despite repeated demands by Plaintiffs, Defendants failed or refused to adequately rectify many of the issues plaguing the vessel.  *Id.* ¶ 21.  On or about July 19, 2019, Plaintiffs traded in the vessel at a substantial loss.  *Id.* ¶ 22.

### B.   Relevant Agreements and Provisions

#### 1.   The Purchase Agreement

Plaintiffs purchased the vessel pursuant to a contract for the purchase and sale of the vessel, entered into by Plaintiffs and the MarineMax Defendants (the "Purchase Agreement"). *See* Compl. ¶ 77; Defs.' Ex. C (the Purchase Agreement), ECF No. 24-3.[6]

The front page of the two-page Purchase Agreement states, in relevant part:

**BUYER ACKNOWLEDGES RECEIVING A FULLY COMPLETED COPY OF THIS AGREEMENT.  BUYER ACKNOWLEDGES READING AND UNDERSTANDING ALL OF THE TERMS AND CONDITIONS IN THIS AGREEMENT, INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS AGREEMENT.**

---

[6]   The Court considers the Purchase Agreement in connection with deciding the instant motion because the Purchase Agreement, which is mentioned throughout the Complaint, *see, e.g.*, Compl. ¶¶ 77-79, 81, is incorporated by reference in – and integral to – the Complaint, and because there is no dispute regarding the Purchase Agreement's authenticity, accuracy, or relevance, *see* Pls.' Br. at 4-5 (discussing the Purchase Agreement as the relevant "contract for the purchase of the vessel").

The Court notes that, although Plaintiffs allege that the Purchase Agreement was entered into by Plaintiffs and "the MarineMax Defendants," Compl. ¶ 77 – seemingly referring to both MarineMax and MarineMax Northeast LLC – the Purchase Agreement itself appears to refer only to MarineMax Northeast LLC, *see* Purchase Agreement at 1.  Although this distinction does not alter the Court's analysis herein, the Court analyzes the Purchase Agreement as though it was an agreement between Plaintiffs and both MarineMax and MarineMax Northeast LLC.  The Court herein refers to these defendants collectively as the "MarineMax Defendants."

**SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES.**

Purchase Agreement at 1 (emphasis in original).  These statements appear directly above a pair of signature lines reflecting the signature of each Plaintiff.  *See id.*

The reverse side of the Purchase Agreement states, under the header "**ADDITIONAL TERMS AND CONDITIONS,**" in relevant part:

1.     **MANUFACTURER'S WARRANTY.**  The boat, motor and accessories sold pursuant to this Agreement are only subject to applicable manufacturer's warranties, if any, except as otherwise expressly provided in this Agreement.

2.     **DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,** *unless* **Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale.  If Seller gives Buyer a written warranty on its own behalf or enters into a service contract in connection with this sale or within 90 days of sale, then any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract.  IN ALL CASES, SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE BREACH OF THIS AGREEMENT, ANY EXPRESS OR IMPLIED WARRANTY OR OTHERWISE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.** . . .

8.     **ENTIRE AGREEMENT.**  This agreement constitutes the entire agreement between the parties and no other verbal, written or printed representations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties.  This Agreement supersedes any prior Purchase Agreements between Buyer and Seller for the purchase of a boat, motor and/or accessories that had not been consummated.  Except as specifically set forth in this Agreement, Seller disclaims any representations or statements by any agents, employees or representatives, whether verbal or in writing, in advertisements or brochures, and Buyer has not relied upon any such representations or statements.

9.     **ATTORNEY'S FEES.**  In the event it is necessary for Seller to employ an attorney to enforce any of the terms of this Agreement or to defend any lawsuit arising out of this Agreement, then Buyer shall pay all of Seller's costs, including

reasonable attorney fees, whether incurred in trial, appellate or bankruptcy proceedings, plus court costs, depositions, investigation and travel expense and any other necessary expenses unless a judgment is entered against Seller for the complete relief sought in any complaint or pleading.

*Id.* at 2 (emphasis in original).[7]

### 2.  The Limited Warranty

Plaintiffs purchased an extended 6-year warranty issued by Brunswick Corp. (the "Limited Warranty").  *See* Compl. ¶ 15; Defs.' Ex. D (the Limited Warranty), ECF No. 24-4.[8]

---

[7]  The portion of the second paragraph of the Purchase Agreement's additional terms and conditions reading "**THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER 'AS IS' AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**" appears in a larger font size than that which is used in the other portions of the Purchase Agreement.  *See* Purchase Agreement at 2 (emphasis in original).

[8]  The Court considers the Limited Warranty in connection with deciding the instant motion because the Limited Warranty, which is mentioned in the Complaint, *see, e.g.*, Compl. ¶ 15, is incorporated by reference in – and integral to – the Complaint, and because there is no dispute regarding the Limited Warranty's authenticity, accuracy, or relevance, *see* Pls.' Br. at 6 (discussing the warranty purchased from Brunswick Corp.).

The Court notes that, although Plaintiffs allege that they purchased the Limited Warranty from Brunswick Corp., Compl. ¶ 15, the Limited Warranty appears to have been issued by "The Sea Ray Division of Brunswick Corporation and Sea Ray Boats, Inc.," *see* Limited Warranty at 2, indicating that the Limited Warranty perhaps was purchased from both Brunswick Corp. and SeaRay Boats.  Notably, although Plaintiffs allege that SeaRay Boats "is a subsidiary of Defendant Brunswick," *see* Compl. ¶ 6, Plaintiffs make no specific factual allegations as to the role that SeaRay Boats played in the complained-of conduct.  Even so, given the Limited Warranty's apparent reference to SeaRay Boats, the Court – in an abundance of caution – analyzes the Limited Warranty as though it was purchased from both Brunswick Corp. and SeaRay Boats and as though both Brunswick Corp. and SeaRay Boats are subject to the Limited Warranty's provisions.  The Court herein refers to these defendants collectively as the "Brunswick Defendants."  Whether the Limited Warranty was issued by Brunswick Corp., SeaRay Boats, or both Brunswick Corp. and SeaRay Boats does not alter the Court's analysis herein.

The Limited Warranty provides that, subject to certain remedies, exclusions, and limitations, "the selling dealer will repair or replace, at its sole discretion, any defects in material or workmanship in the Sea Ray Boat that are reported within the applicable warranty periods set out below." Limited Warranty at 2.

The Limited Warranty further provides, in relevant part:

**OTHER LIMITATIONS**

EXCEPT AS SET FORTH HEREIN OR ON ANY OTHER WRITTEN EXPRESS LIMITED WARRANTIES BY SEA RAY, THERE ARE NO OTHER WARRANTIES EITHER EXPRESS OR IMPLIED PROVIDED BY SEA RAY ON THIS BOAT.  ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE EXPRESSLY EXCLUDED.  SEA RAY FURTHER DISCLAIMS ANY LIABILITY FOR ECONOMIC LOSS ARISING FROM CLAIMS OF PRODUCT FAILURE, NEGLIGENCE, DEFECTIVE DESIGN, MANUFACTURING DEFECT, FAILURE TO WARN AND/OR INSTRUCT, LACK OF SEAWORTHINESS, AND ANY OTHER THEORY OF LIABILITY NOT EXPRESSLY COVERED UNDER THE TERMS OF THIS LIMITED WARRANTY.

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS DISCLAIMED.  TO THE EXTENT THE IMPLIED WARRANTY CANNOT BE DISCLAIMED, IT IS LIMITED TO THE SHORTER OF ONE YEAR FROM THE DATE OF DELIVERY TO THE FIRST RETAIL OWNER OR THE DURATION OF THE RESPECTIVE EXPRESS LIMITED WARRANTIES STATED HEREIN.  TO THE EXTENT ALLOWED BY LAW, NEITHER SEA RAY NOR THE SELLING DEALER SHALL HAVE ANY RESPONSIBILITY FOR LOSS OF USE OF THE BOAT, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR CONSEQUENTIAL DAMAGES.  SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT BE APPLICABLE.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF, INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT BE APPLICABLE.  THIS WARRANTY GIVES THE OWNER SPECIFIC LEGAL RIGHTS, AND THE OWNER MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE OR COUNTRY TO COUNTRY.

*Id.* at 3 (emphasis in original).

### 3.    The Retail Installment Contract and Security Agreement

Plaintiffs and MarineMax Northeast LLC entered into a Retail Installment Contract and Security Agreement in connection with Plaintiffs' purchase of the vessel (the "Retail Installment Contract and Security Agreement").  *See* Compl. ¶¶ 60, 63-64; Defs.' Ex. E (the Retail Installment Contract and Security Agreement), ECF No. 24-5.[9]

With respect to this agreement, Plaintiffs allege that, although they made it clear to MarineMax Northeast LLC that they would not accept financing for a term longer than ten years, *see* Compl. ¶ 61, MarineMax Northeast LLC, "despite Plaintiffs' express wishes, locked Plaintiffs in to a 20 year note as opposed to a 10 year note," *id.* ¶ 63.

Relevant here, the three-page Retail Installment Contract and Security Agreement itself includes, beneath the title "**TRUTH IN LENDING DISCLOSURES**" and in a bolded black box, *inter alia*, the applicable annual percentage rate, finance charge, amount financed, total of payments, and total sale price.  *See* Retail Installment Contract and Security Agreement at 1 (emphasis in original).  The Retail Installment Contract and Security Agreement, in the same bolded black box, indicates the applicable "Number of Payments" – specifically, 240 – and, beneath the sub-header "When Payments Are Due," text reading "Monthly payments starting – September 18, 2014."  *See id.* at 1.

---

[9]   The Court considers the Retail Installment Contract and Security Agreement in connection with deciding the instant motion because the Retail Installment Contract and Security Agreement, which is referenced throughout the Complaint, *see, e.g.*, Compl. ¶¶ 60, 63-64, is incorporated by reference in – and integral to – the Complaint, and because there is no dispute regarding the Retail Installment Contract and Security Agreement's authenticity, accuracy, or relevance, *see* Pls.' Br. at 2, 11.

## II.     Procedural Background

Plaintiffs filed their Complaint on September 3, 2020.  *See* ECF No. 1.  Defendants filed

an Answer to the Complaint on October 2, 2020.  *See* ECF No. 12.  Defendants' fully-briefed

motion for judgment on the pleadings was filed on July 12, 2021.  *See* ECF Nos. 23-25, 27-28.

### DISCUSSION

For the reasons set forth below, each of Plaintiffs' claims is dismissed in its entirety.

## I.      Plaintiffs' Breach of Contract, Breach of Express Warranty, and Breach of Implied Warranty Claims are Dismissed

Plaintiffs assert a breach of contract claim against the MarineMax Defendants.  *See*

Compl. ¶ 77; *see also* Pls.' Br. at 4.  Plaintiffs also assert claims for breach of express warranty

and breach of implied warranty against all Defendants, including the MarineMax Defendants.

*See* Compl. ¶¶ 44-56.

For the reasons that follow, Plaintiffs' claims for breach of contract, breach of express

warranty, and breach of implied warranty are dismissed in their entirety.

### A.      Applicable Law

Under New York law,[10] "a breach of contract claim requires proof of (1) an agreement,

(2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."

*Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016)

(quoting *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)).  "In New

York, 'liability for breach of contract does not lie absent proof of a contractual relationship or

_____

[10] As the parties appear to agree, New York substantive law applies in the instant case.  *See generally* Pl.'s Br. (discussing New York substantive law); Defs.' Br. (same); *see also Bonchon LLC v. LKRG Provisions & Holdings, LLC*, No. 20-CV-03938, 2021 WL 5042858 at *3 n.7 (S.D.N.Y. Oct. 29, 2021) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (quoting *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016))).

privity between the parties.'" *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 30 (2d Cir. 2018) (alteration accepted) (quoting *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (2d Dep't 2009)); *see also Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 679 n.2 (S.D.N.Y. 2017).

"When interpreting a contract, [a court's] 'primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 113-14 (2d Cir. 2014) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract." *Id.* (alterations accepted) (quoting *Howard v. Howard*, 740 N.Y.S.2d 71, 71 (2d Dep't 2002)). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Accelerant Partners, LLC v. Applied Fiber Holdings, LLC*, No. 21-CV-05014, 2021 WL 6113375, at *5 (S.D.N.Y. Dec. 27, 2021) (quoting *Willsey v. Gjuraj*, 885 N.Y.S.2d 528, 530 (2d Dep't 2009)); *see also Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 826 N.E.2d 806, 809 (2005)). "If the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quotation marks omitted). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019) (quotation marks omitted).

"Under New York law, warranties can be express or implied." *Martino v. MarineMax Ne., LLC*, No. 17-CV-04708, 2018 WL 6199557, at *4 (E.D.N.Y. Nov. 28, 2018).  Section 2-313 of the New York Uniform Commercial Code ("NYUCC") governs express warranties, whereas Sections 2-314 and 2-315 of the NYUCC create implied warranties of merchantability and fitness for a particular purpose, respectively. *See Martino*, 2018 WL 6199557, at *4; *see also* N.Y. U.C.C. Law §§ 2-313, 2-314, 2-315.

As to express warranties, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (quoting *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)); *see also* N.Y. U.C.C. Law § 2-313(1)(a).  "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F. Supp. 3d at 482. At least some New York State courts and district courts in this Circuit have held that New York law does not require privity for an express warranty claim, at least in certain circumstances. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-04199, 2016 WL 5372794, at *16-17 (E.D.N.Y. Sept. 26, 2016) (citing *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-09841, 2016 WL 3951185, at *6-7 (S.D.N.Y. July 20, 2016); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295-96 (S.D.N.Y. 2015)).  For example, some courts have held that "[a] buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or

advertisements regarding a product upon which a purchaser relies.'" *Goldemberg*, 8 F. Supp. 3d at 482 (quoting *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (3d Dep't 2008)).  "However, a plaintiff complaining of breach of express warranty must 'set forth the terms of the warranty upon which he relied.'" *Id.* (quoting *Parker v. Raymond Corp.*, 930 N.Y.S.2d 27, 29 (2d Dep't 2011)).

As to implied warranties, "[u]nder New York law, 'the implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.'" *Sarr v. BEF Foods, Inc.*, No. 18-CV-06409, 2020 WL 729883, at *8 (E.D.N.Y. Feb. 13, 2020) (alteration accepted) (quoting *Prue v. Fiber Composites, LLC*, No. 11-CV-03304, 2012 WL 1314114, at *10 (E.D.N.Y. Apr. 17, 2012)).  With respect to an implied warranty of fitness for a particular purpose, "'where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods,' there is an implied warranty that 'the goods shall be fit for such purpose.'" *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (alteration accepted) (quoting N.Y. U.C.C. Law § 2-315).  "As a general matter, in the absence of privity, New York law does not allow implied warranty claims to proceed when there is no claim for personal injuries."  *Kyszenia v. Ricoh USA, Inc.*, No. 20-CV-02215, 2022 WL 326981, at *8 (E.D.N.Y. Feb. 3, 2022); *see also Sarr*, 2020 WL 729883, at *8 ("When plaintiffs allegedly suffer only financial, as opposed to personal, injuries, privity of contract between the plaintiffs and the defendant is a necessary element of the breach of implied warranty claim.").

The NYUCC "generally permits disclaimers of warranties that are adequately clear and conspicuous." *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 200

(E.D.N.Y. 2010); *see also City of New York v. Bell Helicopter Textron, Inc.*, No. 13-CV-06848, 2015 WL 3767241, at *5 (E.D.N.Y. June 16, 2015). Section 2-316 of the NYUCC sets forth the standard for the exclusion of implied warranties under the NYUCC. "To exclude an implied warranty of merchantability, a contract's disclaimer 'must mention merchantability and in case of a writing must be conspicuous.'" *NY Drilling, Inc. v. TJM, Inc. LLC*, No. 20-CV-03111, 2021 WL 5631767, at *3 (E.D.N.Y. Nov. 30, 2021) (quoting N.Y. U.C.C. Law § 2-316(2)). "Similarly, an exclusion of the implied warranty of fitness 'must be by a writing and conspicuous.'" *Id.* (quoting N.Y. U.C.C. Law § 2-316(2)). As relevant here, "conspicuous" is defined "in a common-sense way: it means 'so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.'" *Id.* (quoting N.Y. U.C.C. Law § 1-201(b)(10)). "Whether a term is 'conspicuous' or not is a decision for the court." *Id.* (quoting N.Y. U.C.C. Law § 1-201(b)(10)). Additionally, notwithstanding Section 2-316(2) of the NYUCC, the NYUCC provides generally that, "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *See* N.Y. U.C.C. Law § 2-316(3)(a).

Even where the "basic criteria" for a valid disclaimer are met, "the [NYUCC] separately provides that a court may void such a clause if it finds it 'to have been unconscionable at the time it was made.'" *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 200 (quoting N.Y. U.C.C. Law § 2-302). "The determination of unconscionability is a matter of law for the court to decide." *Id.* (alteration accepted) (quoting *Industralease Automated & Sci. Equip. Corp. v. R.M.E. Enters., Inc.*, 396 N.Y.S.2d 427, 431 (2d Dep't 1977)); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 278 (2d Cir. 2018). "The basic test for

unconscionability, as laid out in the Official Comment to section 2–302, is 'whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 200-01 (quoting N.Y. U.C.C. Law § 2-302 cmt. 1).

"To declare a contract clause unconscionable, New York courts typically require 'a showing that a contract is both procedurally and substantively unconscionable when made.'" *Id.* at 201 (quoting *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (1st Dep't 1998)); *see also Haft v. Haier US Appliance Sols., Inc.*, No. 21-CV-00506, 2022 WL 62181, at *7 (S.D.N.Y. Jan. 5, 2022) ("Plaintiffs must plead both procedural and substantive unconscionability."). "Procedural unconscionability concerns the contract formation process, while substantive unconscionability looks to the content of the contract." *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 201 (alteration accepted) (quoting *Universal Leasing Servs., Inc. v. Flushing Hae Kwan Rest.*, 565 N.Y.S.2d 199, 200 (2d Dep't 1991)). "More specifically, procedural unconscionability considers whether there has been a lack of meaningful choice to accept a challenged provision by evaluating a number of factors, including '(1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power.'" *Haft*, 2022 WL 62181, at *7 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003)). "The inquiry into substantive unconscionability involves an analysis 'of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 202

15

(quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 829 (1988)).  "Procedural and substantive unconscionability have been described as operating on a 'sliding scale,' meaning that 'the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa.'"  *Id.* (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)).

> **B.    Analysis**

Plaintiffs' breach of contract claim – which Plaintiffs bring against the MarineMax Defendants – turns on the Purchase Agreement, as do Plaintiffs' claims for breach of express warranty and breach of implied warranty, insofar as those claims are brought against the MarineMax Defendants.  Accordingly, the Court analyzes Plaintiffs' breach of contract claim together with Plaintiffs' breach of warranty claims as against the MarineMax Defendants.  The Court then analyzes Plaintiffs' breach of warranty claims insofar as they are brought against the remaining defendants.

> **1.    Plaintiffs' Breach of Contract Claim and Breach of Warranty Claims as Against the MarineMax Defendants are Dismissed**

Defendants argue that Plaintiffs' breach of contract claim must fail as a matter of law because the Purchase Agreement provides that the vessel was to be sold "As Is."  *See* Defs.' Br. at 6-8; Defs.' Reply at 1-2.  Similarly, Defendants argue, with respect to the MarineMax Defendants, that "[a]ll express and implied warranties were expressly disclaimed in the Purchase Agreement."  Defs.' Reply at 2.

The Court concludes that, in light of the Purchase Agreement's clear and unambiguous terms, Plaintiffs have failed to plausibly state a breach of contract claim and have failed to plausibly state breach of warranty claims as against the MarineMax Defendants.

The Purchase Agreement plainly provides that the vessel was sold "**'AS IS,'**" with "**NO WARRANTIES ON [SELLER'S] OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**," unless certain conditions not applicable here were met. *See* Purchase Agreement at 2 (emphasis in original).[11]

At least one other decision in this District has interpreted this exact language – there, in a different purchase agreement as to a boat, to which MarineMax Northeast LLC also was party – as sufficient to defeat, at the motion to dismiss stage, breach of contract and breach of warranty claims based on alleged "significant and substantial defects" with the boat at issue in that case. *See Martino*, 2018 WL 6199557, at *1, *3-5 (relying on "As Is" provision identical to the one in the instant action in dismissing breach of contract claim based on, *inter alia*, allegations that defendants, including MarineMax Northeast LLC "fail[ed] to deliver a new boat with no defects meeting the specifications as listed [in the applicable purchase agreement]" and "fail[ed] to cure the defects identified [with respect to the subject boat]").  The Court reaches the same conclusion here.

Even accepting that the vessel at issue here was defective in the manner alleged by Plaintiffs, the Complaint does not state a plausible breach of contract claim based on the alleged defects because, by the Purchase Agreement's clear and unambiguous terms, Plaintiffs agreed to accept the vessel "As Is."  *See id.* at *3-5; *see also Fanok v. Carver Boat Corp., LLC*, 576 F. Supp. 2d 404, 413 (E.D.N.Y. 2008) (dismissing claims, including breach of contract and warranty claims, based on allegations that defendant had delivered a "defective" yacht, because plaintiff had effectively purchased yacht "as is"); *cf. Bocre Leasing Corp. v. Gen. Motors Corp.*,

---

[11]  The Court hereinafter refers to this provision as the Purchase Agreement's "As Is" provision.

645 N.E.2d 1195, 1196-97 (1995) (dismissing tort action based on the purchase of an allegedly

defective helicopter, in which plaintiff alleged, "in sum and substance, a commercial contract

claim," on the basis that "plaintiff chose to purchase the helicopter in 'AS IS' condition").

Also in light of the Purchase Agreement's "As Is" provision, Plaintiffs' breach of

warranty claims as against the MarineMax Defendants are not plausibly stated.

As to any alleged breach of an express warranty on the part of the MarineMax

Defendants, the Purchase Agreement clearly and unambiguously states that the Seller – which,

again, the Court construes as referring to both of the MarineMax Defendants based on the

allegations in Plaintiffs' Complaint – makes no warranties on its own behalf, including express

warranties.  *See* Purchase Agreement at 2.[12]

As to Plaintiffs' claim for breach of implied warranty as against the MarineMax

Defendants, the Court concludes that the Purchase Agreement meets the requirements for

---

[12]  In the Complaint, Plaintiffs allege in conclusory fashion that "[t]he vessel, its systems, mechanisms and its parts were all subject to express warranties."  *See* Compl. ¶ 45.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Regardless, to the extent that Plaintiffs allege that any express warranty derives from the Purchase Agreement itself, the Court need not – and does not – accept that allegation as true, because it is directly contradicted by the Purchase Agreement.  *See SING for Serv., LLC v. DOWC Admin. Servs., LLC*, No. 20-CV-05617, 2022 WL 36478, at *11 n.14 (S.D.N.Y. Jan. 3, 2022).  To the extent that Plaintiffs contend that some prior negotiation or understanding – *i.e.*, one outside the Purchase Agreement's terms – gave rise to an express warranty on the part of the MarineMax Defendants, Plaintiffs cannot state a plausible claim on that theory, because the Purchase Agreement is an agreement in writing to which Plaintiffs and the MarineMax Defendants "assented as the complete and accurate integration of [their] contract."  *See Alfandary v. Nikko Asset Mgmt. Co.*, 337 F. Supp. 3d 343, 358 (S.D.N.Y. 2018) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988)); *see also* Purchase Agreement at 2 (providing that the Purchase Agreement "constitutes the entire agreement between the parties and no other verbal, written or printed representations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties").

exclusion of the implied warranties of merchantability and fitness for a particular purpose.[13] Immediately above signature lines featuring Plaintiffs' signatures, the Purchase Agreement, in all capital, bolded letters, features an admonition to "**SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES.**"  *See* Purchase Agreement at 1 (emphasis in original).  The disclaimer of warranties itself, again in capital, bolded letters, states that the boat is being sold "'**AS IS**'" and that Defendants "**MAKE[ ] NO WARRANTIES ON ITS OWN BEHALF**," and expressly refers to the absence of implied warranties of merchantability and fitness for a particular purpose.  *See id.* at 2 (emphasis in original).  The disclaimer is set off in its own discrete paragraph and features its key terms – including the references to the absence of implied warranties of merchantability and fitness for a particular purpose – in capital letters and in a larger font size than any other text in the Purchase Agreement, making those terms distinctive. *See id.*

This disclaimer is clear and conspicuous and expressly mentions the implied warranties being disclaimed – and, of particular note, expressly mentions the implied warranty of merchantability.  *See NY Drilling, Inc.*, 2021 WL 5631767, at *4-5 (concluding that disclaimer of warranties was valid where disclaimer's text was "in all capital letters and . . . clearly and explicitly disclaim[ed] the warranties of fitness and merchantability" and where disclaimer was "set off in its own discrete paragraph, in a font and type size that differ[ed] from the text surrounding it"); *see also* N.Y. U.C.C. Law § 2-316(2).  Accordingly, the Purchase Agreement

---

[13] Although Plaintiffs appear to rest their claim for breach of implied warranty on the implied warranty of merchantability, *see, e.g.*, Compl. ¶¶ 51-53; Pls.' Br. at 8, the Court, in an abundance of caution, considers also whether Plaintiffs have plausibly stated a claim for breach of an implied warranty of fitness for a particular purpose.

excluded any implied warranties and Plaintiffs have not stated a plausible claim for breach of implied warranty as against the MarineMax Defendants.  *See Martino*, 2018 WL 6199557, at *4 (interpreting the same language as effectively excluding any implied warranties); *see also Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 200 ("The disclaimer here appears to meet all the necessary criteria for validity under the [NYUCC]: it is in capital letters in a separate block paragraph and specifically mentions merchantability, fitness and that the software is being licensed 'AS IS.'").

Notably, Plaintiffs do not argue that the Purchase Agreement's "As Is" provision is ambiguous, unclear, or less than conspicuous; nor do they dispute that, if the "As Is" provision is enforceable, it necessarily precludes their breach of contract and breach of warranty claims as to the MarineMax Defendants.  Rather, Plaintiffs argue, *inter alia*: (1) that the "As Is" provision is not enforceable because that provision is, in Plaintiffs' view, "unfair and unconscionable;" and (2) that, despite Defendants' argument that the vessel was sold "as is," the MarineMax Defendants violated an implied covenant "to act in good faith in the course of performance." Pls.' Br. at 4-5.  Neither of these arguments is availing.

With respect to their unconscionability argument, Plaintiffs cursorily allege in the Complaint that they "lacked a meaningful choice with respect to the terms of the written warranties due to, inter alia, lack of [bargaining] power."  Compl. ¶ 48.  This allegation, even if accepted as true, is insufficient to show that the Purchase Agreement's "As Is" provision is unconscionable, either procedurally or substantively.  Plaintiffs also contend in briefing that the Purchase Agreement was an "adhesion contract" and that they "were not able to negotiate any terms of the agreement and were required to sign the contract as presented."  *See* Pls.' Br. at 4-5. These assertions made in briefing are conclusory and, in any event, are not properly before the

Court.  *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff cannot amend his complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss." (alterations accepted) (quotation marks omitted)).  Nevertheless, even if the Court were to accept as true Plaintiffs' allegations in briefing on the issue of unconscionability, those allegations still would be insufficient to demonstrate unconscionability.

With respect to procedural unconscionability, "[e]ven a form contract that is offered on a 'take it or leave it' basis . . . may be valid," and "inequality in bargaining position alone is not sufficient."  *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017); *see also 510 E. 84th St. Corp. v. Genitrini*, 924 N.Y.S.2d 309, 2011 WL 588768, at *1 (N.Y. Sup. Ct., N.Y. Cnty. 2011) ("The fact that there is inequity of bargaining power is not sufficient to support a conclusion that a contract is unenforceable.").  Aside from Plaintiffs' conclusory allegation that they lacked bargaining power, *see* Compl. ¶ 48 – and their related assertion that they were unable to negotiate the terms of the Purchase Agreement, *see* Pls.' Br. at 5 – Plaintiffs do not make any allegation with respect to their experience or education, or with respect to the "size and commercial setting of the transaction;" nor do they allege that the Purchase Agreement resulted from "high-pressured tactics" or that the Purchase Agreement contains "fine print."  *See Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d 194, 201 (E.D.N.Y. 2010); *cf. Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, No. 01-CV-04788, 2006 WL 587483, at *11 (S.D.N.Y. Mar. 8, 2006) (rejecting, at the summary judgment stage, unconscionability argument where the parties claiming unconscionability had offered "no evidence concerning the factors that will support a finding that a contract is unenforceable under New York law, such as the use of high-pressure tactics, deceptive language, or that there was gross inequality of bargaining power in the

negotiating process").  Without any such or similar allegations, Plaintiffs have not plausibly alleged procedural unconscionability.[14]

With respect to substantive unconscionability, "[d]isclaimers of warranties are commonplace and explicitly permitted by the [NYUCC]."  *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 202 (citing N.Y. U.C.C. Law § 2-316).  Here, Plaintiffs have offered no reason to conclude that the Purchase Agreement's "As Is" provision – which, as set forth above, permissibly disclaims the relevant warranties – was "so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place [at which the agreement was negotiated] as to be unenforceable according to its literal terms."  *Id.* (quoting *Gillman*, 534 N.E.2d at 828); *see also id.* at 202-03 ("[N]umerous New York decisions have found disclaimers of warranties not to be unconscionable absent procedural flaws in the contractual process.").  Accordingly, Plaintiffs have not plausibly alleged substantive unconscionability.

As to Plaintiffs' argument concerning the covenant of good faith and fair dealing, the covenant "cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights."  *Haft*, 2022 WL 62181, at *12 (quoting *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 529 (2d Cir. 2005)).  Thus, Plaintiffs "cannot invoke the covenant to erase or otherwise vary a disclaimer of warranties."  *Id.* (alteration

---

[14] Plaintiffs' assertion that the Purchase Agreement is an adhesion contract, *see* Pl.'s Br. at 4, also is unavailing.  "Pursuant to New York law, 'adhesion is found where the party seeking to enforce the contract used high pressure tactics or deceptive language in the contract and where there is inequality of bargaining power between the parties.  In addition, it must be shown that the contract inflicts substantive unfairness on the weaker party.'"  *SOL Grp. Mktg. Co. v. Lines*, No. 14-CV-09929, 2016 WL 205444, at *6 (S.D.N.Y. Jan. 15, 2016) (alteration accepted) (quoting *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 475 (S.D.N.Y. 2001), *aff'd*, 91 F. App'x 702 (2d Cir. 2002)).  Plaintiffs make no allegation as to the use of high-pressure tactics or deceptive language in the Purchase Agreement, and Plaintiffs have not plausibly alleged substantive unfairness.

accepted) (quoting *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 752 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017)).  The Purchase Agreement permissibly disclaimed the relevant warranties, and Plaintiffs "may not invoke the covenant of good faith and fair dealing to create obligations inconsistent with those . . . applicable to the warranties." *See id.*

In sum, Plaintiffs have failed to state a plausible breach of contract claim, and have similarly failed to state a plausible breach of express warranty claim or plausible breach of implied warranty claim as against the MarineMax Defendants.  Accordingly, Plaintiffs' breach of contract claim is dismissed, and Plaintiffs' breach of express warranty and breach of implied warranty claims as against the MarineMax Defendants are dismissed.

> **2.     Plaintiffs' Breach of Warranty Claims as Against the Remaining Defendants are Dismissed**

Plaintiffs' breach of express warranty and breach of implied warranty claims insofar as they are alleged against the remaining defendants – *i.e.*, the Brunswick Defendants and Mercury Marine – also are insufficiently pled.

Beginning with Plaintiffs' breach of express warranty cause of action, Plaintiffs submit in briefing that they "received written express warranties from Brunswick and Mercury Marine." Pls.' Br. at 8.  As to Mercury Marine, Plaintiffs have not identified an express warranty with respect to which Mercury Marine might be held liable.  The Complaint contains no allegation regarding a written warranty from Mercury Marine, and no party has submitted such a warranty in its briefing on the instant motion.  Nor have Plaintiffs alleged the existence of any "specific representations" made by Mercury Marine "in its sales brochures or advertisements" regarding the vessel or alleged that they relied upon such a representation. *See Goldemberg*, 8 F. Supp. 3d at 482 (quotation marks omitted).  Because Plaintiffs – in connection with their breach of express warranty claim as against Mercury Marine – have not "set forth the terms of the warranty upon

which [they] relied," *id.* (quoting *Parker*, 930 N.Y.S.2d at 29), Plaintiffs have failed to state a

plausible breach of express warranty claim as against Mercury Marine.

Turning to Plaintiffs' breach of express warranty claim as against the Brunswick

Defendants, Plaintiffs appear to rest this claim on the Limited Warranty, *see* Pls.' Br. at 6, which

Defendants appear to concede qualifies as a limited express warranty, *see* Defs.' Br. at 13.

Defendants dispute, though, whether the complained-of defects fall within the Limited

Warranty's scope, and – relatedly – whether Plaintiffs have adequately alleged the existence of

any defect at all.  *See* Defs.' Br. at 8-10.

As relevant here, the Limited Warranty covers "any defects in material or workmanship

in the Sea Ray Boat that are reported within the applicable warranty periods."  Limited Warranty

at 2.  Importantly, "a warranty that protects against defects in materials or workmanship" – as the

Limited Warranty clearly and unambiguously does – "covers manufacturing defects, but not

design defects."  *Catalano*, 167 F. Supp. 3d at 554; *see also Haag v. Hyundai Motor Am.*, 294 F.

Supp. 3d 102, 105 (W.D.N.Y. 2018); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226

(S.D.N.Y. 2015); *Miller v. Hyundai Motor Am.*, No. 15-CV-04722, 2017 WL 4382339, at *4

(S.D.N.Y. Sept. 29, 2017).  "Under New York law, 'a manufacturing defect results when a

mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes

harm' and 'a design defect results when the product as designed is unreasonably dangerous for

its intended use.'"  *Catalano*, 167 F. Supp. 3d at 554 (alterations accepted) (quoting *McCarthy v.

Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997)).  "Because a manufacturing defect exists when

the unit in question deviates in quality and other performance standards from all of the other

identical units, a [manufacturing defect] claim devoid of allegations that a particular unit differed

when compared to others in the same product line will be dismissed."  *Orange Transp. Servs.*,

*Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020) (quoting *Guariglia*

*v. Procter & Gamble Co.*, No. 15-CV-04307, 2018 WL 1335356, at *5 (E.D.N.Y. Mar. 14,

2018)).  Although a plaintiff "need not plead specific facts about the manufacturing process,

improper workmanship, or use of defective materials at the motion to dismiss stage if doing so

would require technical or scientific knowledge about the inner workings of the product," the

plaintiff "must do more than make 'offhand references to manufacturing defects.'"  *Id.* at 319

(alteration accepted) (quoting *Guariglia*, 2018 WL 1335356, at *5); *see also Haag*, 294 F. Supp.

3d at 105 ("[W]here a plaintiff makes only 'conclusory references to manufacturing defects,' and

instead relies on allegations and/or evidence that the claimed defects are common to an entire

class of vehicles based on their design, rather than the result of an error in the manufacturing

process, the plaintiff's claim is more appropriately characterized as a design defect claim, and

plaintiff cannot prevail on an express warranty claim concerning materials and workmanship."

(quoting *Catalano*, 167 F. Supp. 3d at 555)).

Plaintiffs' Complaint does not clear that bar.  Although the Complaint alleges in

conclusory fashion that "many of the issue[s] experienced by plaintiff[s] constituted latent

*manufacturer's* defects," *see* Compl. ¶ 24 (emphasis added), the Complaint's factual allegations

consistently depict defects "more appropriately characterized as . . . design defect[s]," *see*

*Orange Transp. Servs., Inc.*, 450 F. Supp. 3d at 318 (quotation marks omitted).  Importantly,

Plaintiffs do not allege that the "multitude of issues," *see* Compl. ¶ 18, that they allegedly

experienced with the vessel were specific to the vessel that they purchased (or to a specific

subset of vessels including the one that they purchased).  *See Orange Transp. Servs., Inc.*, 450 F.

Supp. 3d at 320 (framing the relevant inquiry as "whether plaintiff has alleged specific

deviations from design standards for particular units rather than flaws consistent across relevant

units"); *see also Guariglia*, 2018 WL 1335356, at *5 (dismissing manufacturing defect claims based on allegedly defective Tide Pods, where plaintiffs "failed to allege how the units they purchased were manufactured differently from other Tide Pods").  Indeed, the Complaint indicates that many of these issues were "inherent to the vessel and its mechanisms and systems, including the engines and cooling system," *see* Compl. ¶ 24, suggesting that the complained-of defects "are common to an entire class of vehicles based on their design," *Orange Transp. Servs., Inc.*, 450 F. Supp. 3d at 320.  Because the Complaint makes only an offhand reference to manufacturing defects, Plaintiffs have not plausibly alleged a manufacturing defect but, rather, have alleged – at most – the existence of a design defect or defects.  Because design defects, however, are not covered by the Limited Warranty, Plaintiffs have failed to state a plausible breach of express warranty claim as against the Brunswick Defendants.

As to Plaintiffs' breach of implied warranty cause of action, Plaintiffs have not stated a plausible claim for breach of implied warranty against the Brunswick Defendants *or* Mercury Marine because Plaintiffs have not alleged facts sufficient to show that they were in privity with any of these defendants and there is no personal injury alleged.  *See Kyszenia*, 2022 WL 326981, at *8.  As to the Brunswick Defendants, in particular, the Court notes that the Limited Warranty "does not create privity for the purposes of a claim for breach of an implied warranty."  *Id.* at *9 (quotation marks omitted); *see also Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 310-11 (N.D.N.Y. 2019).[15]

---

[15] Plaintiffs cite to *Greenberg v. Lorenz*, 9 N.Y.2d 195 (1961), to argue that "some courts have recognized a narrow exception to the privity requirement between sellers and consumers." Pls.' Br. at 8.  The *Greenberg* decision – in which the New York State Court of Appeals recognized an exception to the privity requirement to permit a child to recover for damages she sustained eating canned salmon containing sharp metal, even though it was the child's father who had purchased the can of salmon, *see Greenberg*, 9 N.Y.2d at 198-200 – is plainly inapposite here.

In sum, Plaintiffs have failed to state a plausible breach of express warranty claim or plausible breach of implied warranty claim as against the Brunswick Defendants or Mercury Marine.  Accordingly, Plaintiffs' breach of express warranty and breach of implied warranty claims as against the Brunswick Defendants and Mercury Marine are dismissed.  Because, as set forth above, Plaintiffs also have failed to state a claim for breach of express warranty or breach of implied warranty as to the MarineMax Defendants, Plaintiffs' breach of express warranty and breach of implied warranty claims are dismissed in their entirety.

## II.    Plaintiffs' Magnuson-Moss Warranty Act Claim is Dismissed

Plaintiffs assert a claim against all Defendants under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, based on the same breach of warranty claims addressed above.  *See* Compl. ¶¶ 32-43.

The MMWA provides, in relevant part, that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  As relevant here – and as Plaintiffs appear to acknowledge, *see* Pls.' Br. at 8-9 – "[t]o state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law," *see Garcia*, 127 F. Supp. 3d at 232; *see also Cali v. Chrysler Grp. LLC*, No. 10-CV-07606, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011) ("[C]laims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law." (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022-23 (9th Cir. 2008))), *aff'd*, 426 F. App'x 38 (2d Cir. 2011).

Because, here, Plaintiffs' claims for breach of express warranty and breach of implied warranty are insufficiently pled, Plaintiffs also have failed to state a plausible claim under the

MMWA.  *See, e.g.*, *Warren v. Whole Foods Mkt. Grp., Inc.*, No. 19-CV-06448, 2021 WL 5759702, at *8 (E.D.N.Y. Dec. 3, 2021); *Cummings*, 401 F. Supp. 3d at 315.  Plaintiffs' MMWA claim therefore is dismissed in its entirety.

### III.    Plaintiffs' Truth in Lending Act Claim is Dismissed

Plaintiffs assert a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. against MarineMax Northeast LLC, based on a financing agreement entered into between Plaintiffs and MarineMax Northeast LLC, memorialized in the Retail Installment Contract and Security Agreement.  *See* Compl. ¶¶ 57-65; *see generally* Retail Installment Contract and Security Agreement.  Specifically, Plaintiffs allege that, although they made it clear to MarineMax Northeast LLC that they would not accept financing for a term of longer than ten years, *see* Compl. ¶ 61, MarineMax Northeast LLC, "despite Plaintiffs' express wishes, locked Plaintiffs in to a 20 year note as opposed to a 10 year note," *id.* ¶ 63.  Plaintiffs allege that MarineMax Northeast LLC "failed to adequately disclose the terms of the financing to Plaintiffs as required by law."  *Id.* ¶ 64.

Congress enacted TILA "to 'assure a meaningful disclosure of credit terms' in consumer credit transactions."  *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-03291, 2014 WL 4742509, at *11 (E.D.N.Y. Sept. 23, 2014) (quoting 15 U.S.C. § 1601(a)).  "In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information."  *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011) (citing 15 U.S.C. § 1632); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  "The required material disclosures include, but are not limited to, the amount financed, the annual percentage rate, the finance charge, the total of payments, and the payment

schedule." *Henry v. Flagstar Bank, FSB*, No. 16-CV-01504, 2019 WL 1471267, at *5 (E.D.N.Y. Mar. 31, 2019) (citing 12 C.F.R. § 226.18).

Here, Plaintiffs have not pled factual allegations sufficient to show that MarineMax Northeast LLC failed to provide them with clear, conspicuous, and accurate disclosures of the terms of the financing agreement.

As an initial matter, the Court notes that the three-page Retail Installment Contract and Security Agreement – in a bolded box beneath the bolded, all capital title "**TRUTH IN LENDING DISCLOSURES**" – sets forth the relevant annual percentage rate, finance charge, amount financed, total of payments, and total sales price. *See* Retail Installment Contract and Security Agreement at 1 (emphasis in original). The Retail Installment Contract and Security Agreement, in the same bolded box and beneath the same title, indicates that the "Number of Payments" is 240 and that the "Amount of Payments" is $1,058.05. *See id.* The Retail Installment Contract and Security Agreement further includes, in the same bolded box and beneath the sub-header "When Payments Are Due," text reading "Monthly payments starting – September 18, 2014." *See id.* Plaintiffs make no allegation, nor raise any argument in briefing, indicating how these disclosures might be insufficiently clear or conspicuous. With no such allegation or argument before the Court, the Court concludes that the relevant disclosures – including the disclosure indicating that payments were to be made monthly in 240 (*i.e.*, twenty years' worth of) installments – are sufficiently clear and conspicuous to satisfy TILA's requirements.

Rather than contending that the Retail Installment Contract and Security Agreement's disclosures are unclear or inconspicuous, Plaintiffs allege only that the Retail Installment Contract and Security Agreement failed to capture their "express wishes" to be granted a

10-year, rather than 20-year, note. *See* Compl. ¶¶ 61-63.[16]  Plaintiffs' allegations on this issue

are insufficient to state a plausible TILA claim.  Although the Complaint vaguely refers to a "10

year note which had been promised to," *see* Compl. ¶ 63, Plaintiffs do not make any factual

allegations about this alleged promise: Plaintiffs do not allege that it was MarineMax Northeast

LLC who made this promise; nor do Plaintiffs make any allegation as to where, when, or how

this promise was made.

In sum, Plaintiffs have failed to state a plausible TILA claim.  Plaintiffs' TILA claim

therefore is dismissed in its entirety.

## IV.    Plaintiffs' Claim under New York General Business Law § 349 is Dismissed

Plaintiffs assert a claim under New York General Business Law § 349 ("Section 349")

against all Defendants, *see* Compl. ¶¶ 66-70, specifically on the basis that "Defendants,

individually and in concert, engaged in unfair and deceptive trade practices . . . by inter alia,

misrepresenting to Plaintiffs that the subject vessel was fit for its ordinary an[d] intended use;

that the subject vessel was in merchantable condition free from any known or latent defects; and

that the warranties covering the subject vessel would be honored," *see id.* ¶ 68.

"Section 349 is 'directed at wrongs against the consuming public,' . . . and was enacted to

protect consumers from sellers' deceptive practices."  *Llewellyn v. Asset Acceptance, LLC*, No.

14-CV-00411, 2015 WL 6503893, at *8 (S.D.N.Y. Oct. 26, 2015) (citing *Oswego Laborers'*

*Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995)), *aff'd*, 669

F. App'x 66 (2d Cir. 2016).  To assert a *prima facie* case under Section 349, "a plaintiff must

---

[16]  The Court need not – and does not – accept as true Plaintiffs' self-serving assertions made in
    briefing that "they were hurried in to signing the financing documents along with the
    underling [sic] purchase documents with no explanation or discussion of the terms" and that
    some of the financing documents' terms "*may* have been in blank contrary to the provisions of
    the TILA," *see* Pls.' Br. at 11 (emphasis added).  *See Peacock*, 100 F. Supp. 3d at 231.

demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  Although a plaintiff "is not required to show that the defendant committed the complained-of acts repeatedly – either to the same plaintiff or to other consumers," the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* (quotation marks omitted).  "'Private contract disputes, unique to the parties' and 'single shot transactions' fall outside of the statute." *Id.* (alteration accepted) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25-26).

Here, Plaintiffs have not alleged that Defendants' allegedly unfair and deceptive trade practices were directed at or had an impact on any consumer other than Plaintiffs themselves. *See, e.g.*, Compl. ¶ 68 (alleging that Defendants "engaged in unfair and deceptive trade practices," *inter alia*, by making misrepresentations to *Plaintiffs*); *see also, e.g., id.* ¶ 70 ("As a direct result of Defendants' unfair and deceptive trade practices . . . *Plaintiffs* have suffered damages . . . ." (emphasis added)).  Although Plaintiffs assert in briefing that "[m]illions of Americans participate in recreational boating each year and recreational boating is a multi-billion-dollar industry" and that "[i]t is self-evident that the purchase of recreational boats is consumer-oriented conduct," *see* Pls.' Br. at 9, these general, conclusory assertions – even if the Court were to consider them in resolving the instant motion and accept them as true – are insufficient to state a plausible Section 349 claim, as they do not bear on how specifically *Defendants'* alleged conduct had a broader impact on consumers at large.  *See Llewellyn*, 2015 WL 6503893, at *8.

Accordingly, Plaintiffs have failed to state a plausible Section 349 claim.  Plaintiffs' Section 349 claim therefore is dismissed in its entirety.

## V.    Plaintiffs' Claim under New York General Business Law § 198-D is Dismissed

Plaintiffs purport to assert a claim against all Defendants under New York General Business Law § 198-D – or New York's "vessel lemon law." *See* Compl. ¶¶ 71-75. Plaintiffs cannot state a claim under New York's vessel lemon law, however, because no such law has been enacted. Although a bill amending New York General Business Law to include two new sections – specifically, proposed sections 198-d and 198-e – to "enact[] the vessel lemon law to protect consumers purchasing or leasing boats" has been introduced in the New York State Assembly, that bill has not been enacted. *See* S. Assemb. 6058, 2019 S. Assemb., 242nd Sess. (N.Y. 2019) (indicating that, on February 26, 2019, the bill was "read once and referred to the Committee on Consumer Affairs and Protection" but revealing no further action taken on the bill); *see also generally* N.Y. Gen. Bus. Law § 198. Accordingly, Plaintiffs' claim purportedly brought under New York General Business Law § 198-D is dismissed.[17]

## VI.    Plaintiffs are Afforded an Opportunity to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quotation marks omitted); *accord Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02978,

---

[17] Because the Court dismisses Plaintiffs' claim on the ground set forth above, the Court need not – and does not – consider Defendants' argument that New York General Business Law § 198-D does not apply retroactively. *See* Defs.' Br. at 19-21. The Court notes, however, that Plaintiffs rest their claim on Defendants' alleged failure and/or refusal "to conform the subject vessel to all applicable warranties as required by law, thereby gravely diminishing the value of the subject vessel and causing Plaintiffs to suffer monetary damages." Compl. ¶ 74. As set forth above, Plaintiffs have not plausibly alleged that any of Defendants breached an applicable warranty.

2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018).  "Leave to amend is futile if the amended

complaint would be subject to dismissal for failure to state a complaint upon which relief may be

granted and therefore could not survive a [Rule] 12(b)(6) motion to dismiss."  *Doyle v. United

Airlines, Inc.*, 914 F. Supp. 2d 325, 333 (E.D.N.Y. 2012) (quotation marks omitted).  The

decision whether to grant leave to amend "rests within the sound discretion of the district court."

*Adlife Mktg. & Commc'ns Co.*, 2018 WL 4568801, at *1 (citing *Aetna Cas. & Sur. Co. v. Aniero

Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005)).

Notwithstanding Defendants' position on amendment, *see* Defs.' Reply at 10, the Court

affords Plaintiffs an opportunity to amend.  The Complaint before the Court is the first one filed

in this action, and the Court cannot conclude at this juncture that amendment would be futile.

## VII.   Defendants' Request for Costs and Attorney's Fees is Denied

Citing Clause 9 of the Purchase Agreement's "Additional Terms and Conditions,"

Defendants seek to be awarded costs and attorney's fees.  *See* Defs.' Br. at 21-22; *see also* Defs.'

Reply at 9-10.  Given the cursory nature of the request and the absence of documentation

submitted in support of the request, the request is denied without prejudice.  *See Martino*, 2018

WL 6199557, at *7.

## CONCLUSION

For the reasons set forth above, Defendants' motion for judgment on the pleadings, ECF

No. 23, is GRANTED, and each of Plaintiffs' claims is dismissed in its entirety, without

prejudice.

Plaintiffs are afforded the opportunity to file an amended complaint that cures the

deficiencies set forth herein, by April 11, 2022.  Failure to file an amended complaint by that

date shall constitute a waiver of the right to amend granted herein.  In the event of such waiver,

the claims dismissed without prejudice herein shall be dismissed with prejudice.

SO ORDERED.

_/s/ Diane Gujarati_____
DIANE GUJARATI
United States District Judge

Dated: March 10, 2022
Brooklyn, New York

34