IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID CATALANO and JOANNE CATALANO, | CIVIL ACTION |
| Plaintiffs, | AMENDED COMPLAINT |
| v. | CV No. 20- 4134 (DG) (JMW) |
| MARINEMAX INC., MARINEMAX NORTH EAST LLC, BRUNSWICK CORP., SEARAY BOATS, INC., and MERCURY MARINE, | |
| Defendants. | |

Plaintiffs, **DAVID CATALANO** and **JOANNE CATALANO** (hereinafter referred to herein as "**CATALANO**" and/or "Plaintiffs"), by their attorneys, **AJ GALLO & ASSOCIATES, P.C.**, as and for their Complaint against the above-named defendants hereby allege as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff **DAVID CATALANO** is an individual residing at 181 Peninsula Drive, Babylon, New York.

2. Plaintiff **JOANNE CATALANO** is an individual residing at 181 Peninsula Drive, Babylon, New York, and is the spouse of plaintiff David Catalano.

3. On information and belief, Defendant **MARINEMAX, INC.** (hereinafter referred to herein as "*MARINEMAX*" or "Defendant") is a corporation organized and

1

existing pursuant to the laws of the State of Delaware with its principal place of business located at 2600 McCormmick Drive, Suite 200, Clearwater, Florida, and is in the business of marketing, distributing and selling watercraft to the general public.

4. On information and belief, Defendant **MARINEMAX NORTHEAST, LLC** (hereinafter referred to herein as "*MARINEMAX NE*" or "Defendant") is a limited liability company organized and existing pursuant to the laws of the State of New York with its principal place of business located at 846 S. Wellwood Avenue, Lindenhurst, New York, and is in the business of marketing, distributing and selling watercraft to the general public.

5. On information and belief, Defendant **BRUNSWICK CORP.**, (hereinafter referred to herein as "*BRUNSWICK*" or "Defendant") is corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 26125 N. Riverwoods Blvd. Suite 500, Mettawa, Illinois.

6. On information and belief, Defendant **SEA RAY BOATS INC.** (hereinafter referred to herein as "*SEARAY*" or "Defendant") is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 800 South Gay Street, Suite 1200, Knoxville, Tennessee, is a subsidiary of Defendant Brunswick, and is the manufacturer and marketer of the subject vessel.

7. On information and belief, Defendant **MERCURY MARINE** (hereinafter referred to herein as "MERCURY" or "Defendant") is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at W6250 West Pioneer Road, Fond du Loc, Wisconsin, is a division of Defendant

Brunswick, and the manufacturer of the engines incorporated in to the subject vessel.

## VENUE & JURISDICTION

8. Venue is proper in this Court as Defendants transact business in Suffolk County, New York, and/or material events and occurrences giving rise to this action occurred in said county.

9. This Court has federal question jurisdiction as this action arises under 15 U.S.C. Section 2301, et seq. ("*Magnunson-Moss Warranty Act*"); 15 U.S.C. Section 1601 – 1667(f) ("*Truth in Lending Act*"); and the amount in controversy is in excess of $75,000.00, exclusive of interest, attorney's fees and costs.

10. This Court has supplemental jurisdiction over the remaining counts that arise under New York State law, pursuant *28 U.S.C. §1367*, as they are so related as to form part of the same case or controversy.

11. Plaintiffs are informed and believe, and on that basis allege, that this Court has personal jurisdiction over Defendants because each Defendant has extensive contacts with, and conducts business within, the State of New York and this judicial district; Defendants have caused boats and other ancillary products to be advertised, promoted, and sold in this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contact with this judicial district; and because Defendants have caused tortious injury to Plaintiffs in this judicial district.

12. Upon information and belief. It is alleged that all conditions precedent to the maintenance of this action have been satisfied, have occurred, or have otherwise been waived.

## FACTUAL BACKGROUND

13. On or about August 19, 2014, Plaintiffs purchased a 2014 Sea Ray 300 SLX, HIN SERV2227A414 (the "subject vessel") from Defendant MarineMax Northeast LLC.

14. The particular vessel was recommend by MarineMax's salesperson, Jutsine Stellin, as Plaintiffs made clear they were looking for a reliable and quick pleasure boat.

15. The purchase price of $165,780.00, plus interest, taxes and fees, was financed through a loan arranged by the Defendant MarineMax's aforementioned salesperson. The subject loan was to be a 10-year term with no pre-payment penalty.

16. Said Defendants failed to provide Plaintiffs with the fiscal loan disclosures as required by applicable federal and state laws, including the federal *TILA*.

17. While the relevant purchase agreement stated that the vessel was purchased "as is", it was represented to Plaintiffs by the MarineMax salesperson that the vessel was "brand new", and met Plaintiff's requirements of being a reliable and quick pleasure boat.

18. Notably, it is alleged that the subject sales agreement constitutes a contract of adhesion, containing unconscionable terms and provisions as defined by applicable law, and failed to accurately reflect the deal Plaintiffs bargained for.

19. More precisely, Plaintiffs were informed through the representations made by Defendants' sales person and staff that Plaintiffs were purchasing a brand-new vessel that, upon information and belief, had been delivered directly from the manufacturer, and at no point had any ownership or use by any other third party, and that the subject vessel

4

was fit for the use it was intended for. Plaintiffs relied on these representations in concluding the purchase of the subject vessel.

20. As such, Plaintiffs were led to reasonably believe that the subject vessel was sold as a new, reliable vessel subject to all applicable implied and express warranties.

21. At the time the vessel was purchased, upon information and belief, it was delivered from the dealership's stock directly to Plaintiff, and there were no intermediary parts or after-market parts added. Plaintiffs excepted a new vessel, as represented free of defects and malfunctions, and fit for the its intended use as a reliable pleasure craft.

22. Upon information and belief, at delivery, the vessel was in the same condition, with the same parts and operations as it was when it left the manufacturer's custody and held out to the general public as being a "brand new" vessel fir for its intended use.

23. Plaintiff's purchase of the vessel therefore, was, notwithstanding the specious language to the contrary contained in the relevant Purchase Agreement, that of a brand-new vessel that would perform in a way that a reasonable, ordinary consumer would expect a brand-new vessel or vehicle to do so; in a manner free of mechanical failure and in good working order.

24. Furthermore, the vessel's Manufacturer's Statement of Origin, NYS DMV Boat Registration, Plaintiff's Bill of Sale, Sales Agreement, Extended Service Contract sold to Plaintiffs by the MarineMax salesperson all indicated that the vessel purchased was sold as "new".

5

25. Apart from the foregoing, the vessel was sold with a Sea Ray Limited Warranty covering the vessel and running through at least August 24, 2016.

26. Plaintiffs also purchased an extended 6-year warranty issued by Defendant Brunswick Corp. covering the engines on the vessel.

27. The subject vessel was equipped with engines manufactured and warranted by Defendant Mercury Marine.

28. After purchase, and commencing sometime on or about August 20, 2014, the date of delivery, and continually thereafter, Plaintiffs experienced nothing but problems, mechanical and otherwise, with the vessel.

29. These issues, as documented by, inter alia, Defendant Sea Ray's service records, included, but were not limited to, the following: i) August 20, 2014, Oxygen Sensor Malfunction, ii) October 20, 2014, Trim Malfunction, iii) July 08, 2016, Port Motor Malfunction, iv) August 10, 2016, Port Engine Malfunction (same issue), v) August 14, 2016, Bad Paint, upholstery and Fuel Module, vi) September 30, 2016, Fuel Module, vii) October, 03, 2016, Bad Paint, Fuel Module, Fuel Injectors, viii) June 01, 2017, Trim Malfunction, ix) July 08, 2019, Port Engine and Alternator Malfunction, x) August 05, 2019, Impeller and Water Pump Malfunction, xi) August 29, 2019, Engine Overheat, Riser and Manifold issues, xii) August 30, 2019, Engine Overheat and Exhaust issues, September 09, 2019, Starboard Engine malfunction, October 09, 2019, Oxygen Sensor malfunction, and July 08, 2000, Starboard Engine sensor malfunction.

6

30. On or around the dates above indicated, Plaintiff contacted Defendants Sea Ray and MarineMax to report these issues speaking with Dawn Scarpinato, Michelle, Byrd, and Daniel Koch, among others.

31. As more precisely set forth above, the multitude of issues experienced by Plaintiffs were apparently of a repetitive nature and included, but were not limited to, throttle, transmission and gear box issues, faulty sensors, faulty fuel lines, electrical, battery and alternator issues, power trim issues, water pump and overheating issues, loss of power engine misfiring and exhaust issues, as well as manifold and riser gasket issues. The vessel also apparently suffered from defective paint and upholstery as the surfaces thereof developed unsightly spots of a yellow and pinkish hue all over the white hull and upholstery.

32. In addition, upon information and belief, the Mercury Marine engines with which the vessel was equipped were known tin the industry and by Defendants to be inherently plagued by poor engine performance and malfunctions stemming from the installation of catalytic converters.

33. Defendants failed to dutifully inform Plaintiffs of, among other things, the aforementioned engine issues prior to their purchase of the subject vessel.

34. The majority of the mechanical and/or electronic issues specified above, which again included such issues as engine performance issues, fuel module and fuel injector issues, and trim issues, were never adequately repaired by Defendants, although they were covered under the applicable warranties.

7

35. On account of Defendants' failure to adequately repair the vessel's issues, Plaintiffs were forced to cover cost of the needed repairs themselves.

36. On account of the issues set forth hereinabove, the vessel was plagued with general poor performance which grew increasingly notable season after season and which negatively impacted the value of the vessel.

37. Due to the litany of mechanical failures, including those more fully set forth herein, Plaintiffs, as innocent purchasers for value, who relied upon the combined expertise of Defendants, who are experts nationally and internationally in the field of vessel manufacturing, assembly, and testing, were deprived of their rights as bona fide purchasers to the use and enjoyment of his vessel.

38. Further, all of these mechanical and/or electronic issues gravely diminished the value of the vessel and deprived Plaintiffs of the use and enjoyment of the vessel they bargained for and prohibited the Plaintiffs from utilizing the vessel for its intended and basic purpose.

39. Despite repeated demands by Plaintiffs to Defendants representatives via email and telephone calls, when and as mentioned above, Defendants failed or refused to adequately rectify many of the issues plaguing the vessel despite the express and implied warranties covering the vessel.

40. As reflected in the Defendants' service records of the vessel, Plaintiffs' complaints to Defendants were repetitive in nature and concerned reoccurring and persisting problems with engine overheating, poor engine performance, trim and sensor malfunctions, and the like.

41. On account thereof, and in light of the foregoing, on or about July 19, 2019, plaintiffs had no choice but to trade in the subject vessel at a substantial loss.

42. Plaintiff reasonably anticipated a vessel in brand-new condition, despite the boiler-plate "as is" language in the subject purchase agreement. Said purchase agreement, it is alleged, constitutes an unenforceable contract of adhesion as Plaintiffs had no opportunity or ability to negotiate.

43. Plaintiffs bargained for but did not receive a vessel in brand new condition, fit for its intended use as a reliable pleasure craft, free from material defects, as represented by the Defendants, and which Defendants held out to the general public as such, and placed in the stream of commerce for sale to consumers at large.

44. Due to the failures of the vessel as enumerated herein and the inability of the warranty service providers to make such adequate repairs, Plaintiffs submits that the vessel they purchased was sold to them with, inter alia, manufacturer's defects, in that the vessel, and its components, that Plaintiffs purchased was distinctly different from, and deviated from the manufacturer's ordinary condition of vessels placed into the stream of commerce for sale.

45. Moreover, upon trading in the vessel, it was discovered by Plaintiffs that the MarineMax Defendants, who arranged for financing of the initial purchase of the subject vessel, unbeknownst to Plaintiffs, locked Plaintiffs in to a 20 year note as opposed to a 10 year note which had been promised to Plaintiffs thereby causing plaintiffs to be further "under water" with respect to the value of the subject vessel thereby causing Plaintiffs to

suffer additional fiscal harm.

46. Upon information and belief, many of the issue experienced by Plaintiffs were reoccurring in nature constituted manufacturer's defects, latent or otherwise, inherent to the vessel and its mechanisms and systems, including the engines, fuel and cooling system. All of which, it is alleged, were either known or should have been known by the Defendants, and which, it is alleged upon in formation and belief, plagued the particular model of vessel sold to Plaintiffs.

47. Defendants, through a common and uniform course of conduct, individually and collectively failed to adequately disclose these defects to the general public and to specifically to Plaintiffs in particular prior to their purchase of the subject vessel, and in fact held out the vessel, including its engines and components, to the general public via various marketing materials and campaigns as safe and reliable.

48. At all times relevant hereto, Defendants engaged in the design, manufacture, marketing, sale, and delivery of watercraft and their components such as the subject vessel on a national basis to the general public.

49. The vessel and its mechanisms and systems were separately warranted by Defendants to be free of defects in material, workmanship and design.

50. The said warranties were in place at all times relevant hereto.

51. Defendants failed to honor the applicable warranties in that they failed to adequately repair and/or replace the faulty components and mechanisms of the subject vessel as set forth herein in a workmanlike and timely manner.

52. Defendants also breached the applicable warranties as they failed to deliver to Plaintiffs a vessel having the general characteristics and benefits portrayed by Defendants in misleading fashion to Plaintiffs and to the public at large.

53. Defendants knew of or disregarded the fact that the subject vessel sold to the Plaintiffs as new was incapable of performing as intended, and not fit for its intended and basic use.

## **FIRST CAUSE OF ACTION**

### **(Violation of the Magnuson-Moss Warranty Act)**

54. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "53" of this Complaint as fully as though set forth herein.

55. The Magnuson-Moss Warranty Act, *15 USC 2301, et seq. (the "Act")*, was enacted to in response to widespread misleading and deceptive warranty practices on the part of, inter alia, many manufactures and dealers who were fang to honor warranties.

56. To remedy this problem, the Act, among other things, imposes civil liability upon any warrantor for failing to comply with the obligations under a written warranty and/or implied warranty and authorizes a suit for damages and other equitable relief. *15 USC Section 2310(d)(1)*.

57. The Act also authorizes the award of attorneys' fees. *15 USC Section 2310(d)(1)*.

11

58. Defendants are "warrantors" within the meaning of the Act. *15 USC Section 2301(5)*.

59. Plaintiffs are "consumers" within the meaning of the Act. *15 USC Section 2301(3)*.

60. As set forth above, Defendants, inter alia, expressly warranted the vessel and its parts which warranties constitute "written warranties" within the meaning of the Act and the *Uniform Commercial Code ("UCC")*.

61. Defendants have been unable or unwilling to conform the vessel to all applicable warranties and/or service contracts and have failed to repair one or more nonconformities within a reasonable number of attempts or within a reasonable amount of time.

62. As mentioned herein above, the subject vessel suffered from mechanical problems including engine overheating, loss of power, sensor, trim, and fuel module issues, rendering the subject vessel unseaworthy and posing a hazard to the vessel, its passengers and the public.

63. Defendants held out to the general public, via marketing materials and otherwise, that their products, and indeed the vessel itself, was a reliable pleasure craft suitable and safe for its normal and customary use, when in fact, this, upon information and belief, is not the case. Plaintiffs relied on these representations in choosing to purchase the subject vessel.

64. Defendants have been afforded a reasonable opportunity to cure the vessel's nonconformities pursuant to *15 USC Section 2310(e)*.

65. Defendants have breached all applicable warranties in the manner described hereinabove.

66. As a direct and proximate cause of Defendants' failure to comply with Defendants' express and implied warranties and service contracts, plaintiffs have suffered monetary damages.

67. Pursuant to *15 USC Section 2310(d)(2),* plaintiffs seek, in addition to damages, all costs, including attorneys' fees and expert witness fees.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty)

68. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "67" of this Complaint as fully as though set forth herein.

69. The vessel, its engines, systems, mechanisms and its parts were all subject to express manufacturer's and extended warranties as set forth above, including warranties by Mercury Marine, the manufacturer of the engines on the subject vessel, and Sea Ray, the manufacturer of the vessel's hull, mechanisms and systems.

70. Defendants breached the express warranties in the manner as set forth herein above by failing to adequately repair the engine and mechanical issues plaguing the subject vessel.

71. The express warranties were an integral part of the "basis of the bargain" as the term is used in the *UCC* and are presumed to be part of the vessel's contract of

13

sale.

72. Any limitation period or limitation on recovery are unconscionable within the meaning of *Section 2-302* of the *UCC* and, thus, are unenforceable, in that, among other things, Plaintiffs lacked a meaningful choice with respect to the terms of the written warranties due to, inter alia, lack of barraging power.

73. On account of the foregoing, Plaintiffs have been monetarily damaged by Defendants' breaches of the express warranties in the manner described herein.

## **THIRD CAUSE OF ACTION**

### **(Breach of Implied Warranty)**

74. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "73" of this Complaint as fully as though set forth herein.

75. Under applicable law, a warranty of merchantability is implied in all sales transactions. *UCC Section 2-314(1).*

76. A warranty of merchantability is a warranty implied by law that a product is fit for its intended use. *UCC Section 2-315.*

77. The subject vessel, and its engines, mechanisms, systems and parts were subject to an implied warranty of merchantability.

78. The defects and nonconformities exhibited by the subject vessel constitute a breach of contractual, statutory, and/or common law obligations of the Defendants'.

14

79. At the time of delivery of the subject vessel and at all times subsequent thereto, Plaintiffs justifiably relied on the Defendants' implied warranties, obligations and representations with regard to the vessel, including the representations of Defendant MarineMax's sales staff and experts, and all Sea Ray, Mercury Marine and Brunswick marketing materials holding the subject vessel out to Plaintiffs and the general public as a safe and reliable pleasure craft, free from material defects.

80. As a direct and proximate cause of Defendants' aforementioned breaches and failure to honor all applicable implied warranties, plaintiffs have incurred monetary damages in the manner herein described.

## FOURTH CAUSE OF ACTION

### (Violation of the Federal Truth in Lending Act)

81. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "80" of this Complaint as fully as though set forth herein.

82. The purpose of the statutory scheme is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *15 U.S.C. § 1601(a)*.

83. Under the *Federal Truth in Lending Act* ("TILA"), lenders must disclose the terms and cost of credit by providing to the consumer certain disclosures required by

statute and regulation. A lender's failure to comply with the disclosure requirements under TILA will give rise to a cause of action against it for statutory damages, actual damages, attorney's fees, and rescission.

84. As set forth above, Justine Stellin, a sales representative employed at the time in question by Defendant MarineMax Northeast, arranged for financing of the initial purchase of the subject vessel on behalf of Plaintiffs.

85. Ms. Stellin informed Plaintiffs, on or about the date of purchase, that they were approved for and would receive a 10-year loan with no prepayment penalty. Plaintiffs relied on these representations in executing the finance documents and concluding the purchase transaction.

86. Plaintiffs made it clear to said defendant that they would not accept financing for a term longer than ten (10) years as so doing would negatively impact the vessel's future value and cause them to pay more interest unnecessarily, and relied on said Defendant to ensure that the applicable paperwork reflected said terms.

87. Defendant MarineMax Northeast was well aware of Plaintiffs' wishes but yet choose to ignore same and instead had Plaintiffs execute loan documentation reflecting terms substantially different than those agreed to.

88. Defendant MarineMax Northeast, despite Plaintiffs' express wishes, locked Plaintiffs in to a 20 year note as opposed to a 10 year note which had been promised to Plaintiffs by Ms. Stellin, thereby causing Plaintiffs further damages with respect to the value of the subject vessel thereby causing Plaintiffs to suffer additional fiscal harm.

16

89. Defendant MarineMax Northeast failed to adequately disclose the terms of the financing to Plaintiffs as required by law either prior to or at signing.

90. As a direct result of Defendant MarineMax Northeast's conduct Plaintiffs have incurred monetary damages in the manner herein described, for which they seek recompense and damages, including, costs and attorneys' fees as allowed by law.

## FIFTH CAUSE OF ACTION

### (Violation of New York General Business Law Section 349)

91. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "90" of this Complaint as fully as though set forth herein.

92. *New York General Business Law Section 349*, makes deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state unlawful.

93. In connection with the subject vessel and transaction, Defendants, individually and in concert, engaged in unfair and deceptive trade practices in violation of applicable law by inter alia, misrepresenting to Plaintiffs that the subject vessel was fit for its ordinary an intended use; that the subject vessel was in merchantable condition, free from any known or latent defects; and that the warranties covering the subject vessel would be honored.

94. Upon information and belief, the deceptive trade practices of the Defendants to which Plaintiffs fell prey were geared towards not only Plaintiffs but to the

general public at large.

95. Pursuant to *New York State General Business Law § 349(h)*, a party who has been injured by reason of deceptive acts or practices in the conduct of any business, trade, or commerce, or in furnishing any service or product in New York State may bring an action to recover actual damages and injunctive relief. The Court may also award reasonable attorney fees to the prevailing Plaintiffs.

96. As a direct result of Defendants' unfair and deceptive trade practices as set forth herein, Plaintiffs have suffered damages for which they seek recompense, including costs and attorneys' fees as allowed by law.

## SIXTH CAUSE OF ACTION

### (Breach of Contract)

97. Plaintiffs re-allege and incorporate herein all of the allegations contained in paragraphs "1" through and including "96" of this Complaint as fully as though set forth herein.

98. On or about August 19, 2014, Plaintiffs and the MarineMax Defendants entered into a contract for the purchase and sale of the subject vessel in new condition.

99. It is alleged that said Purchase Agreement failed to clearly and accurately express the intent of the parties in that Plaintiffs bargained for a reliable vessel in brand new condition, and fit for its indented purpose, not an "as is" vessel rife with mechanical and other issues.

100. Given the disproportionate barraging power of the parties, and Plaintiffs' reliance on the representations of the said Defendants, it is alleged that the provisions of

the subject purchase agreement, including any "boiler-plate" "as is" provisions or disclaimer of warranties are enforceable.

101. Pursuant to the terms of that contract, the said Defendants were to tender to Plaintiffs, in exchange for the agreed upon purchase price, a vessel in new condition, free from any known or latent defects, and fit for its ordinary use, not an "as is" vessel with chronic mechanical and other issues.

102. As set forth herein, said Defendants breached said contract by delivering to Plaintiffs a vessel not fit for its ordinary purpose and plagued by latent and known engine and other mechanical defects and issues as set forth herein above.

103. To date, said Defendants have failed to make the repairs necessary to conform the vessel to the contract of sale despite repeated demand for same made by Plaintiffs to said Defendants and their agents and employees as set forth herein above.

104. Plaintiffs have fully performed all of their obligations under the said contract.

105. Plaintiffs relied on the representations of said Defendant's sales staff and expert personnel in deciding to purchase the subject vessel, Defendants cannot now hide behind the boiler-plate fine print of the Purchase Agreement to escape liability for the misrepresentations made that induced Plaintiffs' purchase of the subject vessel. To do so, it is respectfully alleged, would be to work an injustice upon Plaintiffs.

106. As a direct result of the conduct of the said Defendants as set forth herein, Plaintiffs have suffered damages for which they seek recompense, including costs and attorneys' fees as allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all rights, claims and issues so triable under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter judgment against Defendants as follows:

1) Granting Plaintiffs a money judgment as against Defendants in an amount to be determined at trial, but in any event in an amount sufficient to compensate Plaintiffs for the damages caused by the conduct of the named Defendants, on the causes of action set forth in this Complaint, as well as treble and punitive damages, costs and expenses, all with interest thereon, as and to the extent allowed by law, and

2) Granting Plaintiffs such other and further relief which to this Court seems just, proper and equitable.

Dated: Woodbury, New York
April 11, 2022

AJ GALLO & ASSOCIATES, P.C.

Anthony J. Gallo, Esq. (7746)
*Attorneys for Plaintiffs*
1000 Woodbury Road, Suite 212
Woodbury, New York 11797
(631) 987-2658
Email: ajgallo@gallolegis.com

20