UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
David Catalano and Joanne Catalano,

                     Plaintiffs,

      -against-

MarineMax; MarineMax Northeast LLC;
Brunswick Corp.; SeaRay Boats; and
Mercury Marine,

                  Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-04134 (DG) (LGD)

DIANE GUJARATI, United States District Judge:

On September 3, 2020, Plaintiffs David Catalano and Joanne Catalano (collectively, "Plaintiffs") commenced this action against Defendants MarineMax, MarineMax Northeast LLC, Brunswick Corp., SeaRay Boats, and Mercury Marine (collectively, "Defendants"), asserting seven causes of action: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; breach of express warranty; breach of implied warranty; violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; violation of New York General Business Law § 349; violation of New York General Business Law § 198-D; and breach of contract. *See generally* Complaint ("Compl."), ECF No. 1.

On July 12, 2021, Defendants filed a motion for judgment on the pleadings, in which Defendants sought dismissal of Plaintiffs' Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* ECF No. 23. By Memorandum & Order dated March 10, 2022 (the "March 10, 2022 Order"), the Court granted Defendants' motion for judgment on the pleadings, dismissed the claims in the Complaint without prejudice, and afforded Plaintiffs an opportunity to file an amended complaint. *See generally Catalano v. MarineMax* (*Catalano I*), 590 F. Supp. 3d 487 (E.D.N.Y. 2022).

Familiarity with the March 10, 2022 Order is assumed herein.

On April 11, 2022, Plaintiffs filed an Amended Complaint, asserting six causes of action: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; breach of express warranty; breach of implied warranty; violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; violation of New York General Business Law § 349; and breach of contract. *See generally* Amended Complaint ("Am. Compl."), ECF No. 33.

Pending before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). *See* Notice of Motion, ECF No. 44; Declaration of David S. Rutherford in Support of Defendants' Motion to Dismiss ("Second Rutherford Declaration"), ECF No. 45;[1] Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Br."), ECF No. 46; Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 49. Plaintiffs oppose Defendants' motion. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls.' Br."), ECF No. 48.

For the reasons set forth below, Defendants' Motion to Dismiss is granted and the Amended Complaint is dismissed.

## BACKGROUND

### I.    Factual Background

Although the Amended Complaint adds various allegations, the facts alleged in the Amended Complaint do not materially differ from those alleged in the initial Complaint as

---

[1]    Together with the Second Rutherford Declaration, ECF No. 45, Defendants submitted six exhibits, *see* ECF Nos. 45-1–45-6.  To the extent that the Court references these exhibits, it does so on the grounds that they are incorporated by reference in – or integral to – the Amended Complaint and there is no dispute regarding their authenticity, accuracy, or relevance.

relevant here.  *Compare* Compl. *with* Am. Compl.  The Court incorporates by reference herein the detailed factual background set forth in the March 10, 2022 Order.  *See Catalano I*, 590 F. Supp. 3d at 496-500.[2]

As discussed in the March 10, 2022 Order, on or about August 19, 2014, Plaintiffs purchased a 2014 Sea Ray 300 SLX, HIN SERV2227A414 (the "vessel") from MarineMax Northeast LLC.  The vessel was sold as new.  After the vessel's purchase, Plaintiffs experienced certain issues with the vessel, many of which Defendants did not adequately rectify, and on or about July 19, 2019, Plaintiffs traded in the vessel at a substantial loss.  Also as discussed in the March 10, 2022 Order, there existed certain agreements relevant to the vessel's purchase, including (1) a contract for the purchase and sale of the vessel, entered into by Plaintiffs and MarineMax and MarineMax Northeast LLC (together, the "MarineMax Defendants") (the "Purchase Agreement"); (2) an extended 6-year warranty issued by Brunswick Corp. (the "Limited Warranty");[3] and (3) a Retail Installment Contract and Security Agreement entered into by Plaintiffs and MarineMax Northeast LLC (the "Retail Installment Contract and Security Agreement").[4]

The Amended Complaint adds to the allegations contained in the initial Complaint

---

[2]   As noted in the March 10, 2022 Order, the facts set forth in the Factual Background section of the March 10, 2022 Order were viewed in the light most favorable to Plaintiffs.  *See Catalano I*, 590 F. Supp. 3d at 496 n.3.  The facts set forth herein also are viewed in the light most favorable to Plaintiffs.

[3]   Here, as in the March 10, 2022 Order, the Court analyzes the Limited Warranty as though it was purchased from both Brunswick Corp. and SeaRay Boats (collectively, the "Brunswick Defendants") and as though both Brunswick Corp. and SeaRay Boats are subject to the Limited Warranty's provisions.  *See Catalano I*, 590 F. Supp. 3d at 498 n.8.

[4]   The Purchase Agreement is ECF No. 45-2; the Limited Warranty is ECF No. 45-3; and the Retail Installment Contract and Security Agreement is ECF No. 45-4.

allegations regarding the nature of certain Defendants' businesses. *See, e.g.*, Am. Compl. ¶ 3 (alleging that MarineMax "is in the business of marketing, distributing and selling watercraft to the general public"); ¶ 4 (alleging that MarineMax Northeast LLC "is in the business of marketing, distributing and selling watercraft to the general public"); ¶ 6 (alleging that SeaRay Boats "is the manufacturer and marketer of the subject vessel"); ¶ 7 (alleging that Mercury Marine is "the manufacturer of the engines incorporated in to the subject vessel"); *see also* ¶ 37 (alleging that "Defendants . . . are experts nationally and internationally in the field of vessel manufacturing, assembly, and testing").

The Amended Complaint also adds allegations regarding certain representations made to Plaintiffs about the vessel and its financing, as well as regarding Plaintiffs' reliance on those representations. *See, e.g.*, Am. Compl. ¶ 14 ("The particular vessel was recommend [sic] by MarineMax's salesperson, Ju[st]ine Stellin, as Plaintiffs made clear that they were looking for a reliable and quick pleasure boat."); ¶ 17 ("While the relevant purchase agreement stated that the vessel was purchased 'as is', it was represented to Plaintiffs by the MarineMax salesperson that the vessel was 'brand new', and met Plaintiff's requirements of being a reliable and quick pleasure boat."); ¶ 19 (alleging that "in concluding the purchase of the subject vessel," Plaintiffs relied on "representations made by Defendants' sales person and staff that Plaintiffs were purchasing a brand-new vessel that, upon information and belief, had been delivered directly from the manufacturer, and at no point had any ownership or use by any other third party, and that the subject vessel was fit for the use it was intended for"); ¶ 24 ("[T]he vessel's Manufacturer's Statement of Origin, NYS DMV Boat Registration, Plaintiff's Bill of Sale, Sales Agreement, Extended Service Contract sold to Plaintiffs by the MarineMax salesperson all indicated that the vessel purchased was sold as 'new.'"); ¶ 84 ("Justine Stellin, a sales

4

representative employed at the time in question by Defendant MarineMax Northeast, arranged for financing of the initial purchase of the subject vessel on behalf of Plaintiffs"); ¶ 85 ("Ms. Stellin informed Plaintiffs, on or about the date of purchase, that they were approved for and would receive a 10-year loan with no prepayment penalty.  Plaintiffs relied on these representations in executing the finance documents and concluding the purchase transaction."); ¶ 86 ("Plaintiffs made it clear to said defendant that they would not accept financing for a term longer than ten (10) years as so doing would negatively impact the vessel's future value and cause them to pay more interest unnecessarily, and relied on said Defendant to ensure that the applicable paperwork reflected said terms.").[5]

In addition, the Amended Complaint adds allegations regarding the condition of the vessel and the issues Plaintiffs experienced with the vessel after its purchase. *See, e.g.*, Am. Compl. ¶ 21 (alleging that the vessel "was delivered from the dealership's stock directly to Plaintiff, and there were no intermediary parts or after-market parts added"); ¶ 22 (alleging that "at delivery, the vessel was in the same condition, with the same parts and operations as it was when it left the manufacturer's custody and held out to the general public as being a 'brand new' vessel fir [sic] for its intended use"); ¶ 29 (alleging that Plaintiffs' issues with the vessel were "documented by, inter alia, Defendant Sea Ray's service records," and specifying dates and issues); ¶ 40 ("As reflected in the Defendants' service records of the vessel, Plaintiffs' complaints to Defendants were repetitive in nature and concerned reoccurring and persisting problems with engine overheating, poor engine performance, trim and sensor malfunctions, and

---

[5]   Plaintiffs also appear to allege that the vessel was covered by a "Sea Ray Limited Warranty" separate from the "6-year warranty issued by Defendant Brunswick Corp.," the latter of which was discussed in the March 10, 2022 Order and defined therein as the "Limited Warranty." *See* Am. Compl. ¶¶ 25-26.

the like."); ¶ 30 (alleging that "Plaintiff contacted Defendants Sea Ray and MarineMax to report these issues speaking with Dawn Scarpinato, Michelle, Byrd, and Daniel Koch, among others"); ¶ 44 ("Due to the failures of the vessel as enumerated herein and the inability of the warranty service providers to make such adequate repairs, Plaintiffs submits [sic] that the vessel they purchased was sold to them with, inter alia, manufacturer's defects, in that the vessel, and its components, that Plaintiffs purchased was distinctly different from, and deviated from the manufacturer's ordinary condition of vessels placed into the stream of commerce for sale."); ¶ 32 (alleging that "upon information and belief, the Mercury Marine engines with which the vessel was equipped were known tin [sic] the industry and by Defendants to be inherently plagued by poor engine performance and malfunctions stemming from the installation of catalytic converters").

Further, the Amended Complaint adds allegations regarding Defendants' marketing of their products and the vessel and regarding Plaintiffs' reliance on such marketing. *See, e.g.*, Am. Compl. ¶ 47 (alleging that Defendants "held out the vessel, including its engines and components, to the general public via various marketing materials and campaigns as safe and reliable"); ¶ 63 ("Defendants held out to the general public, via marketing materials and otherwise, that their products, and indeed the vessel itself, was a reliable pleasure craft suitable and safe for its normal and customary use, when in fact, this, upon information and belief, is not the case."); ¶ 79 (alleging that "Plaintiffs justifiably relied on . . . all Sea Ray, Mercury Marine and Brunswick marketing materials holding the subject vessel out to Plaintiffs and the general public as a safe and reliable pleasure craft, free from material defects"); *see also* Am. Compl. ¶ 94 ("Upon information and belief, the deceptive trade practices of the Defendants to which

Plaintiffs fell prey were geared towards not only Plaintiffs but to the general public at large.").[6]

## II.    Procedural Background

Plaintiffs filed the initial Complaint on September 3, 2020.  *See* ECF No. 1.  Defendants filed an Answer to the Complaint on October 2, 2020.  *See* ECF No. 12.  Defendants' fully-briefed motion for judgment on the pleadings was filed on July 12, 2021.  *See* ECF Nos. 23-25, 27-28.

By the March 10, 2022 Order, the Court granted Defendants' motion for judgment on the pleadings and dismissed the claims in the Complaint without prejudice.  *See generally Catalano I*, 590 F. Supp. 3d 487.  Specifically, the Court (1) dismissed Plaintiffs' breach of contract, breach of express warranty, and breach of implied warranty claims; (2) dismissed Plaintiffs' Magnuson-Moss Warranty Act claim; (3) dismissed Plaintiffs' Truth in Lending Act claim; (4) dismissed Plaintiffs' claim under New York General Business Law § 349; (5) afforded Plaintiffs an opportunity to amend, noting that the Complaint was the first one filed in this action and that the Court could not conclude at that juncture that amendment would be futile; and (6) denied without prejudice Defendants' request for costs and attorney's fees.  *See generally id.*[7]

On April 11, 2022, Plaintiffs filed the Amended Complaint.  *See* ECF No. 33.  On September 26, 2022, Defendants filed the instant motion to dismiss, which Plaintiffs oppose.  *See* ECF Nos. 44-46, 48-49.

## STANDARD OF REVIEW

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

---

[6]   The Amended Complaint also includes statements more properly characterized as argument than factual allegation.  *See, e.g.*, Am. Compl. ¶¶ 16, 18, 105.

[7]   The Court also dismissed Plaintiffs' claim under New York General Business Law § 198-D, which is not realleged in the Amended Complaint.  *See Catalano I*, 590 F. Supp. 3d at 513.

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).  However, "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 555, 558.  A court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal conclusions" and "plausibly suggest an entitlement to relief").  "In considering a motion to dismiss for failure to state a claim, '[a] district court is normally required to look only to the allegations on the face of the complaint,'" though "[it] may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

**DISCUSSION**

In the March 10, 2022 Order, the Court set forth the applicable law with respect to each of Plaintiffs' claims and detailed the deficiencies with respect to each of Plaintiffs' claims. Notwithstanding having been afforded – and availed themselves of – the opportunity to amend, Plaintiffs have failed to cure the deficiencies noted by the Court in the March 10, 2022 Order. Throughout their Amended Complaint and briefing, Plaintiffs continue to rely on allegations already found to be insufficient and arguments already found to be unavailing.[8]  To the extent that Plaintiffs rely on allegations and arguments previously considered by the Court and addressed in the March 10, 2022 Order, the Court's analysis contained therein remains unchanged.

---

[8]   For example, despite the Court expressly stating in the March 10, 2022 Order that it need not – and does not – accept as true Plaintiffs' self-serving assertions made in briefing that "they were hurried in to signing the financing documents along with the underling [sic] purchase documents with no explanation or discussion of the terms" and that some of the financing documents' terms "may have been in blank contrary to the provisions of the TILA," *see Catalano I*, 590 F. Supp. 3d at 511 n.16 (quoting Plaintiffs' briefing on the motion for judgment on the pleadings), Plaintiffs continue to make these assertions, *see* Pls.' Br. at 16. Similarly, despite the Court expressly stating in the March 10, 2022 Order that Plaintiffs' general, conclusory assertions that "[m]illions of Americans participate in recreational boating each year and recreational boating is a multi-billion-dollar industry" and that "[i]t is self-evident that the purchase of recreational boats is consumer-oriented conduct" are insufficient to state a plausible Section 349 claim, as these assertions do not bear on how specifically *Defendants'* alleged conduct had a broader impact on consumers at large, *see Catalano I*, 590 F. Supp. 3d at 512-13 (quoting Plaintiffs' briefing on the motion for judgment on the pleadings), Plaintiffs continue to raise the same assertions, *see* Pls.' Br. at 14.  In addition, despite the Court expressly stating in the March 10, 2022 Order that Plaintiffs' cursory allegation that they "lacked a meaningful choice with respect to the terms of the written warranties due to, inter alia, lack of [bargaining] power" was insufficient to show that the Purchase Agreement's "As Is" provision is unconscionable, either procedurally or substantively, *see Catalano I*, 590 F. Supp. 3d at 506 (quoting Compl.), Plaintiffs continue to make this allegation, *see* Am. Compl. ¶ 72.

The Court notes that many of the Amended Complaint's added allegations do no more than restate allegations and arguments raised in connection with the initial Complaint and therefore render Plaintiffs' claims no more plausible than before.  *See, e.g.*, Am. Compl. ¶¶ 42, 94.

For the reasons set forth below, each of Plaintiffs' claims is dismissed in its entirety.

**I.     Plaintiffs' Breach of Contract, Breach of Express Warranty, and Breach of Implied Warranty Claims are Dismissed**

Plaintiffs assert a breach of contract claim against the MarineMax Defendants.  Plaintiffs also assert claims for breach of express warranty and breach of implied warranty against all Defendants, including the MarineMax Defendants.

In the March 10, 2022 Order, the Court set forth the applicable law as to Plaintiffs' breach of contract, breach of express warranty, and breach of implied warranty claims, including the elements of breach of contract and breach of express warranty under New York law, the criteria for breach of implied warranty claims and disclaimers of warranties, and the requirements for declaring a contract clause unconscionable.  *See Catalano I*, 590 F. Supp. 3d at 500-03.

For the reasons that follow, Plaintiffs' claims for breach of contract, breach of express warranty, and breach of implied warranty are dismissed in their entirety, Plaintiffs having failed to cure the deficiencies with respect to those claims.

**A.     Plaintiffs' Breach of Contract Claim and Breach of Warranty Claims as Against the MarineMax Defendants are Dismissed**

In the March 10, 2022 Order, the Court concluded that, in light of the Purchase Agreement's clear and unambiguous terms, Plaintiffs had failed to plausibly state a breach of contract claim and had failed to plausibly state breach of warranty claims as against the MarineMax Defendants.  *See Catalano I*, 590 F. Supp. 3d at 504.  In addressing these claims, the Court began by noting that the Purchase Agreement plainly provides that the vessel was sold " **'AS IS,' "** with " **NO WARRANTIES ON [SELLER'S] OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**," unless certain conditions, which were

not applicable, were met.  *See id*.  Because, by the Purchase Agreement's clear and unambiguous

terms, Plaintiffs agreed to accept the vessel "As Is," the Court concluded that that the initial

Complaint did not state a plausible breach of contract claim based on the vessel's alleged

defects.  *See id*.

The Amended Complaint does not contain any allegations that alter the Court's

conclusion that Plaintiffs' breach of contract claim is not plausibly stated.  Although Plaintiffs

now allege that they relied on certain representations that the vessel was, *inter alia*, brand new

and a reliable and quick pleasure boat, *see, e.g.*, Am. Compl. ¶ 17, 79, these allegations do not

save Plaintiffs' breach of contract claim, particularly in light of the Purchase Agreement's clear

and unambiguous language that "[t]his agreement constitutes the entire agreement between the

parties and no other verbal, written or printed representations, claims or inducements are

incorporated into this Agreement, unless in writing and signed by both parties."  *See Catalano I*,

590 F. Supp. 3d at 498, 501; Purchase Agreement at 2; *Accelerant Partners, LLC v. Applied

Fiber Holdings, LLC*, No. 21-CV-05014, 2021 WL 6113375, at \*5 (S.D.N.Y. Dec. 27, 2021).

Plaintiffs' breach of warranty claims as against the MarineMax Defendants also are not

plausibly stated in light of the Purchase Agreement's "As Is" provision, as the Court noted in the

March 10, 2022 Order.  *See Catalano I*, 590 F. Supp. 3d at 505.  As to any alleged breach of an

express warranty on the part of the MarineMax Defendants, the Purchase Agreement clearly and

unambiguously states that the "Seller" – which the Court continues to construe as referring to

both of the MarineMax Defendants based on the allegations in Plaintiffs' Amended Complaint –

makes no warranties on its own behalf, including express warranties.  *See id*.

As to Plaintiffs' claim for breach of implied warranty as against the MarineMax

Defendants, nothing in the Amended Complaint causes the Court to alter its conclusion that the

Purchase Agreement meets the requirements for exclusion of the implied warranties of merchantability and fitness for a particular purpose. *See id.* at 505-06; *see also* Purchase Agreement at 2.[9]

Further, Plaintiffs' allegations regarding the procedural and substantive unconscionability of the Purchase Agreement remain cursory and fail to save Plaintiff's claims. *See Catalano I*, 590 F. Supp. 3d at 506-07. Plaintiffs contend in briefing that they "could not walk away from the transaction on account of the onerous contract terms as their trade in vessel ha[d] already been sold and delivered by Defendant MarineMax prior to Plaintiffs consummating the purchase of the new vessel." *See* Pls.' Br. at 8. This assertion, which is not contained in the Amended Complaint, is not properly before the Court and is, in any event, unavailing. *See Catalano I*, 590 F. Supp. 3d at 506 (citing *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015)).

Plaintiffs have failed to cure the deficiencies in their breach of contract claim and their breach of express warranty and breach of implied warranty claims as against the MarineMax Defendants. Accordingly, Plaintiffs' breach of contract claim is dismissed, and Plaintiffs' breach of express warranty and breach of implied warranty claims as against the MarineMax Defendants are dismissed.

---

[9] Plaintiffs argue that New York recognizes a "peculiar knowledge" exception to "anti-release provisions," which Plaintiffs assert "to some extent, a waiver of implied warranty appears to be." *See* Pls.' Br. at 11. However, the Amended Complaint contains no allegations that plausibly give rise to an inference that the MarineMax Defendants possessed any "peculiar knowledge" about problematic issues with the vessel that Plaintiffs "could not have discovered . . . through the exercise of due diligence." *See SOL Grp. Mktg. Co. v. Lines*, No. 14-CV-09929, 2016 WL 205444, at *5 (S.D.N.Y. Jan. 15, 2016). To the contrary, Plaintiffs assert that "even some quick internet research reveals . . . the problems plaguing the type of vessel sold to Plaintiffs." *See* Pls.' Br. at 3.

**B.      Plaintiffs' Breach of Warranty Claims as Against the Remaining Defendants are Dismissed**

Plaintiffs' breach of express warranty and breach of implied warranty claims insofar as they are alleged against the remaining Defendants – *i.e.*, the Brunswick Defendants and Mercury Marine – also remain insufficiently pled.

With respect to Plaintiffs' breach of express warranty cause of action, Plaintiffs still have not identified an express warranty with respect to which Mercury Marine might be held liable. As with the initial Complaint, the Amended Complaint contains no allegation identifying a written warranty from Mercury Marine and no party has submitted such a warranty in its briefing on the instant motion to dismiss. *See Catalano I*, 590 F. Supp. 3d at 508.  Nor do Plaintiffs allege the existence of any "specific representations" made in "sales brochures or advertisements" regarding the vessel or allege that they relied upon such a representation. *See id.* (citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  Plaintiffs' vague allegation that "Defendants held out to the general public, via marketing materials and otherwise," that the vessel was "a reliable pleasure craft suitable and safe for its normal and customary use," *see* Am. Compl. ¶ 63; *see also* Am. Compl. ¶ 47, is insufficient to demonstrate an express warranty by Mercury Marine – or by *any* of the Defendants.  *See Feliciano v. Gen. Motors LLC*, No. 14-CV-06374, 2016 WL 9344120, at *3 (S.D.N.Y. Mar. 31, 2016) (finding that statements that Chevrolet Cruze was "safe" and "reliable" amounted to "puffery" and were "insufficient to create an express warranty," and collecting cases).

With respect to Plaintiffs' breach of express warranty claim against the Brunswick Defendants, Plaintiffs appear to reassert that the vessel's alleged defects fell within the scope of the Limited Warranty, which covers "any defects in material or workmanship in the Sea Ray

Boat that are reported within the applicable warranty periods." *See* Pls.' Br. at 10-11; Limited Warranty at 2. As noted in the March 10, 2022 Order, "'a warranty that protects against defects in materials or workmanship' – as the Limited Warranty clearly and unambiguously does – 'covers manufacturing defects, but not design defects.'" *See Catalano I*, 590 F. Supp. 3d at 508 (quoting *Catalano v. BMW of North America*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016)).

Plaintiffs continue to allege in conclusory fashion that many of the issues experienced by Plaintiffs constituted manufacturer's defects, in that the vessel and its components "deviated from the manufacturer's ordinary condition of vessels placed into the stream of commerce for sale." *See* Am. Compl. ¶¶ 44, 46. Plaintiffs' allegations are insufficient to establish a breach of express warranty here. Moreover, Plaintiffs' added allegation in the Amended Complaint that "the Mercury Marine engines with which the vessel was equipped were known tin [sic] the industry and by Defendants to be inherently plagued by poor engine performance and malfunctions stemming from the installation of catalytic converters," *see* Am. Compl. ¶ 32, only strengthens the conclusion that Plaintiffs have not plausibly alleged a manufacturing defect but, rather, have alleged – at most – the existence of a design defect or defects. *See Catalano I*, 590 F. Supp. 3d at 509. Because design defects, however, are not covered by the Limited Warranty, Plaintiffs have failed to state a plausible breach of express warranty claim as against the Brunswick Defendants.[10]

As to Plaintiffs' breach of implied warranty cause of action, Plaintiffs still have not stated

---

[10] Although the Amended Complaint adds an allegation that appears to suggest that the vessel was covered by a "Sea Ray Limited Warranty" separate from the Limited Warranty discussed in the March 10, 2022 Order, *see* Am. Compl. ¶ 25, neither the Amended Complaint nor Plaintiffs' briefing provides any details regarding this alleged warranty and the Court's conclusion that Plaintiffs have failed to state a plausible breach of express warranty claim is not altered by the general reference in the Amended Complaint to this alleged warranty. *See Catalano I*, 590 F. Supp. 3d at 509-10.

a plausible claim for breach of implied warranty against the Brunswick Defendants or Mercury Marine because Plaintiffs have not alleged facts sufficient to show that they were in privity with any of these defendants and there is no personal injury alleged. *See Catalano I*, 590 F. Supp. 3d at 509 (citing *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 364-65 (E.D.N.Y. 2022)).

In sum, Plaintiffs have failed to cure the deficiencies in their breach of express warranty and breach of implied warranty claims as against the Brunswick Defendants or Mercury Marine. Accordingly, these claims are dismissed. Because, as set forth above, Plaintiffs also have failed to cure the deficiencies in their breach of express warranty and breach of implied warranty claims as to the MarineMax Defendants, Plaintiffs' breach of express warranty and breach of implied warranty claims are dismissed in their entirety.

## II.    Plaintiffs' Magnuson-Moss Warranty Act Claim is Dismissed

Plaintiffs assert a claim against all Defendants under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, based on the same breach of warranty claims addressed above. *See* Am. Compl. ¶¶ 54-67.

In the March 10, 2022 Order, the Court set forth the applicable law as to Plaintiffs' MMWA claim, including the requirement that "to state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *See Catalano I*, 590 F. Supp. 3d at 510 (alteration accepted) (quotation omitted). The Court concluded that the initial Complaint failed to state a plausible claim under the MMWA. *See id*. The Amended Complaint fares no better.

Because, here, Plaintiffs' claims for breach of express warranty and breach of implied warranty are insufficiently pled, Plaintiffs also have failed to state a plausible claim under the MMWA. *See, e.g.*, *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 120 (E.D.N.Y. 2021); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 315 (N.D.N.Y. 2019). Plaintiffs'

15

MMWA claim therefore is dismissed in its entirety.

**III.    Plaintiffs' Truth in Lending Act Claim is Dismissed**

Plaintiffs assert a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* against MarineMax Northeast LLC based on a financing agreement entered into between Plaintiffs and MarineMax Northeast LLC, memorialized in the Retail Installment Contract and Security Agreement.  *See* Am. Compl. ¶¶ 81-90; Retail Installment Contract and Security Agreement.  Specifically, Plaintiffs allege that, although they made it clear that they would not accept financing for a term longer than ten years, *see* Am. Compl. ¶ 86, MarineMax Northeast LLC, "despite Plaintiffs' express wishes, locked Plaintiffs in to a 20 year note as opposed to a 10 year note," *see* Am. Compl. ¶ 88.

In the March 10, 2022 Order, the Court set forth the applicable law as to Plaintiffs' TILA claim, including that TILA, in general, "requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information" and that "[t]he required material disclosures include, but are not limited to, the amount financed, the annual percentage rate, the finance charge, the total of payments, and the payment schedule." *See Catalano I*, 590 F. Supp. 3d at 510-11 (quotations omitted).

In the March 10, 2022 Order, the Court noted that the three-page Retail Installment Contract and Security Agreement – in a bolded box beneath the bolded, all capital title "**TRUTH IN LENDING DISCLOSURES**" – sets forth the relevant annual percentage rate, finance charge, amount financed, total of payments, and total sales price.  *See id.* at 511.  The Court noted that the Retail Installment Contract and Security Agreement, in the same bolded box and beneath the same title, indicates that the "Number of Payments" is 240 and that the "Amount of Payments" is $1,058.05 and further includes, in the same bolded box and beneath the sub-header "When Payments Are Due," text reading "Monthly payments starting – September 18, 2014."

*See id*.

The Court noted that Plaintiffs made no allegation, nor raised any argument in briefing, indicating how these disclosures might be insufficiently clear or conspicuous. *See id*. With no such allegation or argument before the Court, the Court concluded that the relevant disclosures – including the disclosure indicating that payments were to be made monthly in 240 (*i.e.*, twenty years' worth of) installments – were sufficiently clear and conspicuous to satisfy TILA's requirements. *See id*. Moreover, the Court noted that Plaintiffs alleged only that the Retail Installment Contract and Security Agreement failed to capture their "express wishes" to be granted a 10-year, rather than 20-year, note and concluded that their allegations on this issue were insufficient to state a plausible TILA claim. *See id*. at 511-12. The Court noted that although the Complaint vaguely referred to a "10 year note which had been promised to," Plaintiffs did not make any factual allegations about this alleged promise. *See id*. at 512.

Here, Plaintiffs make no allegation in the Amended Complaint, or raise any argument in briefing, indicating how the Retail Installment Contract and Security Agreement's disclosures might be insufficiently clear or conspicuous. The Amended Complaint does contain the added allegations about the MarineMax Northeast LLC sale representative's statements and Plaintiffs' reliance on those statements. *See, e.g.*, Am. Compl. ¶ 85. However, these allegations, which are not materially different from those contained in the initial Complaint and addressed in the March 10, 2022 Order, do not cure the deficiencies in Plaintiffs' TILA claim. *See Catalano I*, 590 F. Supp. 3d at 511-12.

Accordingly, Plaintiffs have failed to state a plausible TILA claim. Plaintiffs' TILA claim therefore is dismissed in its entirety.

## IV.   Plaintiffs' Claim under New York General Business Law § 349 is Dismissed

Plaintiffs assert a claim under New York General Business Law § 349 ("Section 349")

against all Defendants, *see* Am. Compl. ¶¶ 91-96, specifically on the basis that "Defendants, individually and in concert, engaged in unfair and deceptive trade practices . . . by inter alia, misrepresenting to Plaintiffs that the subject vessel was fit for its ordinary an[d] intended use; that the subject vessel was in merchantable condition free from any known or latent defects; and that the warranties covering the subject vessel would be honored," *see* Am. Compl. ¶ 93.

In the March 10, 2022 Order, the Court set forth the applicable law as to Plaintiffs' Section 349 claim, noting that to assert a *prima facie* case under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result," and noting that "[p]rivate contract disputes, unique to the parties and single shot transactions fall outside of the statute." *See Catalano I*, 590 F. Supp. 3d at 512 (quotations omitted).

In the March 10, 2022 Order, the Court noted that Plaintiffs had not alleged that Defendants' allegedly unfair and deceptive trade practices were directed at or had an impact on any consumer other than Plaintiffs themselves and concluded that Plaintiffs had failed to state a plausible Section 349 claim. *See id.*

In the Amended Complaint, Plaintiffs have not cured the deficiency with their Section 349 claim. Plaintiffs continue to rely on substantially the same allegations and arguments raised in their initial Complaint and briefing. *See, e.g.*, Am. Compl. ¶ 93 (alleging that Defendants "engaged in unfair and deceptive trade practices," by, *inter alia*, making misrepresentations to *Plaintiffs*); Am. Compl. ¶ 96 (alleging that "[a]s a direct result of Defendants' unfair and deceptive trade practices . . . *Plaintiffs* have suffered damages . . . ." (emphasis added)); Pls.' Br. at 14 (arguing that "[m]illions of Americans participate in recreational boating each year and recreational boating is a multi-billion-dollar industry" and that "[i]t is self-evident that the

purchase of recreational boats is a consumer-oriented conduct that transcend any one particular transaction but effects the general public and the market as a whole").  The Amended Complaint's added allegation that "[u]pon information and belief, the deceptive trade practices of the Defendants to which Plaintiffs fell prey were geared towards not only Plaintiffs but to the general public at large," *see* Am. Compl. ¶ 94, is both conclusory and wholly insufficient to state a plausible Section 349 claim.  *See, e.g.*, *Llewellyn v. Asset Acceptance, LLC*, No. 14-CV-00411, 2015 WL 6503893, at *8 (S.D.N.Y. Oct. 26, 2015), *aff'd*, 669 F. App'x 66 (2d Cir. 2016).

The Amended Complaint fails to cure the deficiencies identified by the Court in the March 10, 2022 Order.  Plaintiffs have failed to state a plausible Section 349 claim.  Plaintiffs' Section 349 claim therefore is dismissed in its entirety.

## V.  Plaintiffs Are Not Granted Leave to Further Amend

In their briefing on the instant motion, Plaintiffs request leave to further amend the Amended Complaint "if the Court should decide that any of Plaintiffs' causes of action do not contain sufficient factual matter to state a claim showing that Plaintiff is entitled to relief, or if Plaintiffs' amended complaint should be found to have any other deficiency."  *See* Pls.' Br. at 19. Defendants oppose the request.  *See* Defs.' Reply at 9-10.  Defendants assert that Plaintiffs should not be granted leave to amend because Plaintiffs were given the opportunity to amend and filed an Amended Complaint that failed to cure the deficiencies in their claims.  *See* Defs.' Reply at 9-10.

Here, dismissal of the claims in the Amended Complaint is without leave to amend given that Plaintiffs were apprised of the pleading deficiencies in Plaintiffs' initial Complaint by way of Defendants' motion for judgment on the pleadings and the Court's March 11, 2022 Order granting that motion and detailing the pleading deficiencies; that Plaintiffs already were afforded – and availed themselves of – the opportunity to replead; that the Amended Complaint fails to

cure the deficiencies in any of Plaintiffs' claims; and that there is no indication that Plaintiffs could provide additional allegations that might cure the deficiencies set forth above and in the March 10, 2022 Order and lead to a different result – indeed, Plaintiffs proffer no such additional allegations.  *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018).

## VI.     Defendants' Request for Costs and Attorney's Fees

Citing Clause 9 of the Purchase Agreement's "Additional Terms and Conditions," Defendants seek an opportunity to submit evidence, *in camera*, of the fees and expenses they have incurred in defending this matter in support of an award for costs and fees.  *See* Defs.' Br. at 23-24; Defs.' Reply at 9.  Defendants may pursue any such relief by bringing a motion in accordance with Rule 54(d) of the Federal Rules of Civil Procedure.  *See Martino v. MarineMax Northeast, LLC*, No. 17-CV-004708, 2018 WL 6199557, at *7 (E.D.N.Y. Nov. 28, 2018).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 44, is GRANTED and the Amended Complaint, ECF No. 33, is dismissed in its entirety.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: September 5, 2023
        Brooklyn, New York